**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| 1. **JEAN-ROBIN SOLOW,**<br>2. **GERALD K. KANDEL**<br>3. **ROBERT E. KNOPES**<br>4. **FEDERICO A. MAURA**<br>5. **RONALD M. MARTINEZ**<br>6. **STANLEY A. ZUCKERMAN**<br><br>on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | **C.A. No. 06-872C**<br><br>**Senior Judge Smith** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

IRA M. LECHNER
Attorney for Plaintiffs
19811-4th Place
Escondido, CA 92029
Phone: 858-864-2258
Fax; 760-839-5755

Dated: May 1, 2007

# TABLE OF CONTENTS


I. Introduction — Page 6

II. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE DOCTRINES OF RES JUDICATA OR COLLATERAL ESTOPPEL — Page 9

A. RES JUDICATA DOES NOT BAR PLAINTIFFS' CLAIMS — Page 10

B. ISSUE PRECLUSION DOES NOT BAR PLAINTIFFS' CLAIMS — Page 13

III. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS — Page 15

A. THE STATUTE OF LIMITATIONS MAY BE EQUITABLY TOLLED UNDER THE *IRWIN* PRESUMPTION — Page 16

B. THE STATUTE OF LIMITATIONS IS EQUITABLY TOLLED UNDER THE DOCTRINE OF *AMERICAN PIPE* AND ITS PROGENY — Page 21

IV. PLAINTIFFS' CLAIMS ARE NOT BARRED BY LACHES — Page 29

A. PLAINTIFFS DID NOT DELAY IN FILING SUIT BECAUSE *ARCHULETA* WAS PENDING — Page 30

B. THE DEFENDANT HAS NOT BEEN MATERIALLY PREJUDICED — Page 31

# TABLE OF AUTHORITIES

**Cases**


*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F. 2d 1020 (Fed. Cir. 1992) — Page 34

*Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F. 2d 1157(Fed. Cir. 1993). — Page 29, 34

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) — Page 31

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) — *Passim*

*Ammex, Inc. v. United States*, 334 F.3d 1052 (Fed. Cir. 2003) — Page 10

*Arakaki v. United States*, 62 Fed. Cl. 244 (2004) — Page 19

*Archuleta v. United States*, Fed. Cl. No. 99-205C — *Passim*

*Bailey v. West*, 160 F. 3d 1360 (Fed. Cir. 1998) (en banc) — Page 17, 18

*Brice v. Sec'y of Health and Human Servs*., 240 F.3d 1367 (Fed. Cir. 2001) — Page 18

*Burnett v. New York Central Railroad Co.*, 380 U.S. 424 (1965) — Page 20

*Cane Tennessee, Inc. v. United States*, 44 Fed. Cl. 785 (1999) — Page 30

*Catholic Social Svcs. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (en banc) — Page 26

*Chapman Law Firm Co. v. United States*, 72 Fed. Cl. 14 (2006) — Page 13

*Clymore v. United States*, 217 F.3d 370 (5th Cir. 2000) — Page 35

*Cornetta v. United States*, 851 F. 2d 1372 (Fed. Cir. 1988) (en banc) — *Passim*

*Crown, Cork & Seal v. Parker*, 462 U.S. 345 (1983) — *Passim*

*CW Government Travel, Inc. v. United States*, 61 Fed. Cl. 559 (2004) — Page 35

*Dana v. E.S. Originals, Inc.*, 342 F.3d 1320 (Fed. Cir. 2003) — Page 13

*Devlin v. Scardelletti*, 536 U.S. 1; 153 L. Ed. 2d 27 (2002) — Page 25

| | |
|---|---|
| *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) | Page 22 |
| *Elmore v. Henderson*, 227 F.3d 1009 (7th Cir. 2000) | Page 25 |
| *Entendencia v. United States*, No.06-515C (Fed. Cl., March 19, 2007) | Page 19 |
| *Foster v. Hallco Mfg. Co.,* 947 F.2d 469 (Fed. Cir. 1991) | Page 11, 12 |
| *Frazer v. United States*, 288 F.3d 1347 (Fed. Cir. 2002) | Page 18, 21 |
| *Hoover v. Department of Navy*, 957 F. 2d 861 (Fed. Cir. 1992) | *Passim* |
| *Howard-Pinson v. United States*, 74 Fed. Cl. 551 (2006) | Page 13 |
| *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990) | *Passim* |
| *Jaquay v. Principi*, 304 F.3d 1276 (Fed. Cir. 2002) (en banc) | Page 17 |
| *Kirkendall v. Dep't of the Army*, No. 05-3077 (Fed. Cir., March 7, 2007) | Page 17 |
| *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987) | Page 27 |
| *LaForge v. Budd Construction Co., Inc. v. United States*, 48 Fed. Cl. 566 (2001) | Page 33 |
| *Land Grantors in Henderson, Union, & Webster Counties, Ky. v. United States*, 74 Fed. Cl. 518 (2006) | Page 19 |
| *Land Grantors in Henderson, Union & Webster Counties, Ky.v. United States*, 64 Fed. Cl. 661 (Fed. Cl. 2005) | Page 19 |
| *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) | Page 18, 21 |
| *McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002) | Page 27 |
| *Montana v. United States*, 440 U.S. 147 (1979) | Page 9 |
| *Northrop Grumman Corp. v. United States*, 70 Fed. Cl. 230 (2006) | Page 13 |
| *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272 (Ct. Cl. 1972) | Page 24 |
| *RHI Holdings, Inc. v. United States,* 142 F.3d 1459 (Fed. Cir. 1998) | Page 18 |
| *Schrader v. United States*, 75 Fed. Cl. 242 (2007) | Page 10 |
| *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450 (2d Cir. 1996) | Page 11 |

*Simons v. United States*, 74 Fed. Cl. 709 (2006) Page 11, 12

*Six v. United States*, 71 Fed. Cl. 671 (2006) Page 33, 34

*Stone Container Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000) Page 28

*Southern Pacific R. Co. v. United States*, 168 U.S. 1 (1897) Page 10

*Taylor v. United States*, 41 Fed. Cl. 440 (1998) Page 24

*United States v. Beggerly,* 524 U.S. 38 (1998) *Passim*

*United States v. Brockamp*, 519 U.S. 347 (1997) *Passim*

*Yang v. Odom,* 392 F.3d 97 (3d Cir. 2004) Page 27

*Young v. United States*, 535 U.S. 43 (2002) Page 16, 17

**Statutes**

5 U.S.C. § 5551(a) Page 12

28 U.S.C. § 2501 *Passim*

**Secondary Authority**

Rhonda Wasserman, *Tolling: The American Pipe Tolling Rule and Successive Class Actions*, 58 Fl. Law Rev., 803 (2006) **Page 23**

# I. <u>Introduction</u>

The *Archuleta* case began as an action against all agencies of the United States to remedy violations of 5 U.S.C. § 5551(a) with respect to the computation of lump-sum payments for unused annual leave when employees retire, separate, or die. *See*, Complaint and Amended Complaints in *Archuleta et al. v. United States*, No. 99-205C. Ultimately, more than one hundred (100) putative class representatives became named plaintiffs; among them there were more than eighty (80) former employees of the 17 largest Federal agencies, and eight (8) former employees of the VA. After many years of negotiation, the parties agreed to sever the claims of former VA employees and to settle the claims of the former employees of the largest 17 Federal Government agencies in the *Archuleta* case which was embodied in a Settlement Agreement approved by this Court on June 1, 2006.

<u>**No mention is made in the *Archuleta* Settlement Agreement of employees of any other agencies of the Federal Government agencies.**</u>

The Settlement Agreement explicitly deals <u>ONLY</u> with the claims of former employees of those 17 agencies that are specifically identified in Exhibit 4 to the Settlement Agreement. Thus, Paragraph I of the Agreement specifies the "Settlement Class Definition" as: "All civilian employees who retired, died, or separated beginning April 7, 1993 and before September 7, 1999 from employment by an agency, establishment or instrumentality thereof of the 17 federal agencies identified in Exhibit 4…" (Appendix, Vol.1, p.2, to Plaintiffs' Motion For Final Approval of Settlement). Paragraph II(C) defines the class as "the named plaintiffs other than those employed by the Department of Veterans Affairs and a person who falls within the definition of the Archuleta Settlement class specified in Paragraph I…".

Footnote 1 to the "Settlement Class Definition" states: "The parties have agreed to sever the issues relating to former employees of the Department of Veterans Affairs."

**No mention is made of employees of agencies other than the 17 listed agencies and the VA.**

Paragraph IX of the Agreement is entitled "Interpretation and Enforcement". Subparagraph A provides: "This Settlement Agreement sets forth the entire agreement of the parties *with respect to the subject matter hereof as to all potential class members formerly employed by any of the agencies listed in Attachment 4 and/or their successors and assigns*." (Emphasis added).

**Again, no mention was made of any other agencies**.

Paragraph X (A), entitled "Jurisdiction of the Court", provides that "a Final Judgment, dismissing with prejudice, pursuant to the terms of this Settlement Agreement and Rule 41(a)(1)(B) of the Rules of the Court of Federal Claims, this case and all opt-in claims that have been made or that will be made within the time specified in the Distribution Plan in the litigation *with respect to the members of the Archuleta Settlement class or their successors and assigns*, shall be entered, subject to severance by the Court of all claims enumerated in Footnote 1" (emphasis added). The language specifically connects the "Final Judgment" dismissing the *Archuleta* case and all opt-in claims "with prejudice" only to the "members of the Archuleta Settlement class". As demonstrated above, the "Archuleta Settlement Class" is defined in Paragraphs I and II(C) of the Agreement as composed of "the named plaintiffs" and the former employees of the 17 agencies listed in Exhibit 4.

**No mention is made of agencies that were not included on the list of 17 agencies in Exhibit 4 or of employees who were formerly employed by agencies which were not included in Exhibit 4.**

Finally, Paragraph XI, entitled "Release", provides as follows: "This Settlement Agreement shall constitute a full and complete release of all claims brought or which could have been brought against the United States, or any other agencies or instrumentalities of the United States, or any agents, employees, or officers thereof arising from the subject matter of the litigation *with respect to potential class members formerly employed by any of the agencies listed in Exhibit 4 and/or their successors and assigns*." (Appendix, Vol. 1, p. 23; emphasis added).

**The specificity of the agreed-upon "release" terminology, limiting its application only to former employees of the 17 agencies listed in Exhibit 4, is self-evident.**

Thereafter, the former employees of the VA who were explicitly severed from *Archuleta* filed their own class action Complaint in *Robert M. Athey et al. v. United States,* No. 99-2051C. Ms. Solow and other plaintiffs in the case at bar attempted to intervene in the *Athey* case on the ground that Solow's class action claims were indirectly related to the class action claims of the VA plaintiffs. Upon examination of the particular language of the *Archuleta* Settlement Agreement, referenced *supra*, this Court suggested that Ms. Solow should file her own case rather than intervene in the *Athey* case:

> MR. LECHNER: …I thought it was more efficient in my responsibility to her as my client and to those people who we both know never received any notice. Their claims could not be wiped from the settlement because they never even received notice. They had no opportunities to go and file unless they just fortuitously heard about it.
>
> THE COURT: Well, notice wouldn't be the problem, because in reading that paragraph that you read, "All such employees who retired, died, or separated beginning April 7, 1993, and before September 1999 from employment by an agency, establishment, or instrumentality thereof of the 17 federal agencies identified in Exhibit 4…".
>
> So it seems to me the class is those 17 agencies who meet those years. Ms. Solow seems to me [is] not in a class, and therefore, she can go back and file her own suit or her own trying to seek class certification of her

> class but not join in this litigation, which seems to me over but for the 17 people who are at VA.

Transcript, *Athey et al. v. United States*, December 12, 2006, pg. 21

Plaintiffs' counsel agreed to withdraw the motion to intervene. The Solow plaintiffs then filed the instant case as a separate class action on behalf of former employees of all federal agencies other than the 17 agencies settled in Archuleta and the VA.

## II. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE DOCTRINES OF RES JUDICATA OR COLLATERAL ESTOPPEL

Defendant's assertion that Plaintiffs' action is barred by the doctrine of res judicata is completely without merit. Nor does collateral estoppel operate as a bar. None of the elements of either doctrine apply to Plaintiffs' action.

The United States Supreme Court has summarized both doctrines as follows: "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction…cannot be disputed in a subsequent suit between the same parties or their privies….'" *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49 (1897).

### A. RES JUDICATA DOES NOT BAR PLAINTIFFS' CLAIMS

Although Defendant's Motion to Dismiss correctly cites the test used by the United States Court of Appeals for the Federal Circuit to establish whether a cause of action is barred by res judicata (also known as claim preclusion), Defendant distorts the facts of the case at bar to reach an erroneous conclusion. As stated in *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003), "the party asserting the bar must

prove that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *See also Schrader v. United States*, 75 Fed. Cl. 242, 248-49 (2007).

First, the Plaintiffs in this case are pointedly not the same nor are they in privity with the Settlement Class in *Archuleta v. United States*, Fed. Cl. No. 99-205C. None of the Plaintiffs named in the Solow case are named as Plaintiffs in *Archulta*. And, as to proof of privity, Defendant certainly has not proved any contractual or legal relationship between any of the named Plaintiffs in both cases. Defendant seems to suggest in argument that some legal privity existed between the named Plaintiffs in Archuleta and the Solow Plaintiffs because the putative class in the *Archuleta* Complaint included all former civilian employees of the Federal Government. But, the actual Settlement Class was much smaller and did not include the *Solow* Plaintiffs, or the class they purport to represent. Significantly, the claims that the parties agreed to have dismissed with prejudice in the Settlement Agreement were those of the Settlement Class only, not the potential claims of Ms. Solow and former employees of agencies other than the identified 17 agencies plus the VA. The Settlement Agreement and this Court's Order approving the settlement were entirely silent with respect to the potential claims of the *Solow* Plaintiffs. As this Court noted in the December 12, 2006 hearing on Defendant's motion in *Athey*: "It seems to me the class is those 17 agencies who meet those years." Transcript, p. 21.

By no stretch of imagination are the putative class plaintiffs in the *Solow* case in privity with either the *Archuleta* plaintiffs or the class of employees who were employed by the 17 agencies, and certainly, as the moving party with its motion to dismiss, defendant has not carried its burden of proving any privitiy relationship.

Second, Plaintiffs' claims are not based on the same transactional facts previously litigated in *Archuleta*: "[C]laim within the meaning of res judicata principles [] […] does not mean merely 'argument or assertion.' 'Claim' is used in the sense of the facts giving rise to the suit." *Foster v. Hallco Mfg. Co.,* 947 F.2d 469,478-79 (Fed. Cir. 1991); *Simons v. United States*, 74 Fed. Cl. 709,714 (2006) (citing §24 RESTATEMENT (SECOND) OF JUDGMENTS (1982) (brackets within the quotation are reproduced as they appear in the *Simons* opinion).

In *Simons*, this Court opined: "The United States Court of Appeals for the Second Circuit has further clarified that 'a first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second are present in the first.'" *Simons*, 74 Fed. Cl. at 714 (quoting *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1463-64 (2d Cir. 1996). The claims of the *Solow* plaintiffs obviously are based on different "transactional facts" than the facts that were involved with the *Archuleta* class plaintiffs.

Defendant confuses common questions of law with "transactional facts". While the Government agreed to settle the claims of the members of *Archuleta* class that the United States violated the lump-sum payment statute, and those questions of law also are involved in the *Solow* case, there can be no doubt that the factual evidence needed to support the settlement of the *Archuleta* case is not the same factual evidence required to support a final judgment in *Solow*; They simply do not arise out of the same "transaction or connected series of transaction" as defined in *Simons*. Each case involves entirely different federal agencies and distinctly different groups of plaintiffs with different transactional facts to arrive at computations of lump-sum pay. For example, Ms. Solow and the putative Plaintiffs in her

case claim that the Resolution Trust Corporation and other agencies not settled in *Archuleta* did not include pay increases in the computation of their lump-sum payment when they retired which they would have been paid if they had remained in the employ of the Federal Government for the remainder of their unused annual leave as mandated by 5 U.S.C. 5551(a). Obviously, none of those specific facts had any bearing whatsoever on the computation of back pay and interest for the named plaintiffs settled in *Archuleta*, nor even the claims of any of the other employees of the 17 agencies who are members of, and "opted-in", to the *Archuleta* settlement class. And, Defendant also knows that the transactional facts necessary to prove the claims for Sunday pay and Foreign Post allowances for members of the putative class in the *Solow* case are not at all the same claims subsequently settled in *Archuleta*. Defendant cannot have it both ways, as *Foster v. Hallco Mfg. Co.* and *Simons* note that "claims" are used in the sense of the facts giving rise to the suit, not merely arguments or assertions of legal principles.

In sum, res judicata does not bar plaintiffs' claims here because (1) the parties in *Solow* are not the same as, or in privity with, the plaintiffs in *Archuleta*; (2) *Archuleta* proceeded to a final judgment of claims which were entirely different than those involved in *Solow*; and (3) the second claims (*Solow*) are not based on the same set of transactional facts as the first (*Archuleta*).

**B. <u>ISSUE PRECLUSION DOES NOT BAR PLAINTIFFS' CLAIMS</u>**

Nor does the doctrine of issue preclusion (also known as collateral estoppel) bar Plaintiffs' claims. The doctrine bars "re-litigation of a matter that has been heard and decided." *Chapman Law Firm Co. v. United States*, 72 Fed. Cl. 14, 16 (2006). This Court has also stated: "The doctrine only applies when the issues to be litigated (1) are identical to those raised in the prior proceeding; (2) actually were litigated in the prior proceeding; (3) played a 'critical and necessary part' of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted …had a

full and fair opportunity to litigate the issue in the prior proceeding." *Northrop Grumman Corp. v. United States*, 70 Fed. Cl. 230, 233 (2006) (citing *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003)); *see also Howard-Pinson v. United States*, 74 Fed. Cl. 551, 554 (2006).

First, most certainly, Defendant knows that the issues affecting the employees who were <u>not employed by any of the 17 agencies</u> were never litigated at all in the Archuleta settlement. Again, Defendant confuses "issues" affecting the *Solow* Plaintiffs with principles of law with respect to the lump-sum payment statute. It can not be argued that claims preclusion or collateral estoppel can now be asserted to bar any future claim based on the lump-sum payment statute by any and every former employee of the United States because the Government agreed to settle the *Archuleta* class action case. Certainly, the named Plaintiffs in Archuleta and those putative class members formerly employed by one of the 17 agencies who opt-in to the settlement are forever barred by both res judicata and collateral estoppel, but the lump-sum statute remains in the United States Code and any Government employee who is aggrieved by the computation of his or her lump-sum payment is not barred from bringing suit within the applicable limitations period *so long as he or she is not one of the members of the opt-in Archuleta settlement class*.

Second, the issues with respect to the agencies other than the 17 agencies did not play a "critical and necessary part" of the judgment in *Archuleta;* in fact, they were not part of the settlement class, as the Court already has noted, and they were never even mentioned in the settlement.

Third, the *Solow* plaintiffs not only had no "full and fair opportunity to litigate the issue in the prior proceeding", but the Government did not provide them with any notice of the terms of the *Archuleta* settlement. Considering each and every element of the doctrine of collateral estoppel or

issue preclusion, it is dispositive in the case at bar. The *Solow* Plaintiffs against whom collateral estoppel is asserted have not yet litigated any of the issues affecting them before this Court. Moreover, the only "issue" actually litigated to final judgment on the merits in *Archuleta* was the fairness of that specific Settlement Agreement based on facts distinctly applicable to employees of 17 identified agencies.

Plainly, as demonstrated by the explicit wording of the Settlement Agreement, the resolution of the *Archuleta* case as approved by this Court did not resolve any class action claims that could be brought in the future by persons: (1) who were not named plaintiffs in *Archuleta;* (2) who were formerly employed by federal agencies other than the 17 agencies listed in Exhibit 4; and (3) who were formerly employed by the Department of Veterans Affairs. Defendant relies on the wording of the usual language contained in the "Release" clause of Paragraph XI of the settlement to the effect that it

constituted a "full and complete release of all claims brought or which could have been brought against the United States, or any agents, employees, or officers thereof arising from the subject matter of the litigation…". But, Defendant ignores the critical language that follows in the same sentence, to wit, "*with respect to the potential class members formerly employed by any of the agencies listed in Exhibit 4 and/or their successors and assigns*". Thus, while the "Release" in its entirety bars any and all claims that were "brought or which could have been brought against the United States", it specifically applies only "*with respect to the potential class members formerly employed by any*" of the 17 agencies, not the potential class members in the *Solow* case who were NOT employed by any of those 17 agencies. Therefore, Plaintiffs' claims are not barred by either res judicata or collateral estoppel.

## III. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendant's blanket assertion that Plaintiffs' claims are barred by the statute of limitations contained in 28 U.S.C. § 2501 is misguided and contrary to well-established precedent. Notably, Defendant's Motion to Dismiss cites several cases for the proposition that "this bar applies to all civil actions whether legal, equitable, or mixed." But the cases cited by Defendant pertain to 28 U.S.C. §2401, not to the statute at issue in the case at bar. *See* Def.'s Motion to Dismiss, p. 9.

Defendant is committed to an absolutist position with respect to a ban on all equitable tolling in all circumstances with respect to the limitations period of § 2501. It is the Government's view that the limitations period can not be tolled even, i.e.,(1) if fraud or trickery on the part of agents of the United States induced plaintiffs to delay filing their claims; (2) if the complainant acted with due diligence but filed a defective pleading during the limitations period; (3) if the claim was inherently unknowable within the limitations period; (4) if the plaintiff through no fault of his own was unable to sue within the limitations period but did so as soon as he could; and (5) even if putative plaintiffs obeyed the rule announced by the Supreme Court and waited until filing their complaint in reliance on another class action that was pending in court. We shall first examine Defendant's premise that there can be no equitable tolling at all with respect to § 2501, and then discuss the ramifications of equitable tolling in class action cases.

## A. <u>THE STATUTE OF LIMITATIONS MAY BE EQUITABLY TOLLED UNDER THE *IRWIN* PRESUMPTION</u>

Justice Scalia has written: "It is hornbook law that limitations periods are 'customarily subject to equitable tolling,' unless tolling would be 'inconsistent with the text of the relevant statute.' Congress must be presumed to draft limitations periods in light of this background principle." *Young v. United States*, 535 U.S. 43, 49-50 (2002) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)); *see also United*

*States v. Beggerly,* 524 U.S. 38, 48 (1998); *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 558-59 (1974).

In *Irwin*, the Supreme Court announced the rule that statutes of limitation in actions against the Government are subject to the same rebuttable presumption of equitable tolling applicable to suits against private defendants.

Regarding an express waiver of sovereign immunity, Chief Justice Rehnquist stated:

> Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent, as well as a practically useful principle of interpretation…. Congress, of course, may provide otherwise if it wishes to do so.

*Id.* at 95-96.

Cases further defining the *Irwin* doctrine hold that the presumption may be rebutted only if there is good reason to believe that Congress did <u>not</u> want tolling to apply. *United States v. Brockamp*, 519 U.S. 347, 350 (1997); *see also Young v. United States*, 535 U.S. 43, 49 (2002); *United States v. Beggerly*, 524 U.S. 38, 48 (1998). After *Irwin* was decided, the Supreme Court clarified the factors (now termed the *Brockamp* factors) to be considered in the determination of whether Congress intended to bar equitable tolling: the statute's (1) detail; (2) use of technical language; (3) repetition of the limitations period; (4) explicit inclusion of exceptions, and (5) underlying subject matter. *Brockamp* at 350-52.

The Federal Circuit has emphatically held that it will apply the *Irwin* presumption "absent a <u>clear contrary intent</u> of Congress to limit jurisdiction created by a particular statute." *Kirkendall v. Dep't of the Army*, No. 05-3077, 2007 WL 675744 (Fed. Cir., March 7, 2007) (quoting *Bailey v. West*, 160 F. 3d 1360, 1368 (Fed. Cir. 1998) (en banc)). The Court has allowed equitable tolling in many instances. *Compare Jaquay v. Principi*, 304 F.3d 1276, 1286 (Fed. Cir. 2002) (en banc)

(equitable tolling available in a veterans claims case), *and Bailey v. West*, 160 F.3d. 1360, 1362-68 (Fed. Cir. 1998) (same). In some limited circumstances, the court has held that the specific statute of

limitations involved was not susceptible to application of the Irwin presumption. *Brice v. Sec'y of Health and Human Servs*., 240 F.3d 1367,1370-71(Fed. Cir. 2001) (equitable tolling not available in compensation action under the National Childhood Vaccine Injury Act), *and RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461-63 (Fed. Cir. 1998) (equitable tolling not available in tax refund case).

Although the United States Court of Appeals for the Federal Circuit has thus far declined to definitively answer whether the doctrine of equitable tolling stays the Tucker Act's Statute of Limitations, the Court has signaled that equitable tolling may apply to the Tucker Act under the right circumstances. *Martinez v. United States*, 333 F.3d 1295, 1318 (Fed. Cir. 2003); *Frazer v. United States*, 288 F.3d 1347, 1352-53 (Fed. Cir. 2002). The Federal Circuit has even gone so far as to analyze the *Brockamp* factors when considering 28 U.S.C. §2501. For example, in *Martinez*, the Federal Circuit discussed the Tucker Act and the statute at issue in *Irwin* (where equitable tolling was allowed), and made a comparison to the statutes of limitation at issue in *Brockamp* and *Beggerly* (where equitable tolling was not allowed). The Court stated: "To be sure, section 2501 appears to have more in common with the limitations statute at issue in *Irwin* than with the statutes at issue in *Brockamp* and *Beggerly*. Actions under section 2501 are, by definition, for money damages and thus have much in common with ordinary actions between private parties." *Martinez*, 333 F.3d at 1318. And, in *Franconia Associates et al. v. United States*, 536 U.S. 129 (2002), in an analogous case involving the timeliness of claims filed under the Tucker Act where the

Government also took an absolutist position with regard to §2501, the Supreme Court noted: "Contrary to the Government's contention, the text of § 2501 is unexceptional [as compared to a 'number of contemporaneous state statutes of limitations applicable to suits between private parties']….In line with our recognition that limitations principles should generally apply to the Government 'in the same way that' they apply to private parties, *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990), we reject the Government's proposed construction of §2501. That position, we conclude, presents an 'unduly restrictiv[e]' reading of the congressional waiver of sovereign immunity, *Bowen v. City of New York*, 476 U.S. 467, 479 (1986), rather than 'a realistic assessment of legislative intent,' *Irwin*, 498 U.S., at 95."

As recently as March, 2007, this Court stated: "This Court has previously recognized that the statute of limitations [§ 2501] may be tolled in certain circumstances." *Entendencia v. United States*, No.06-515C (Fed. Cl., March 19, 2007). In *Arakaki v. United States*, 62 Fed. Cl. 244 (2004), Judge Hewitt stated: "The Court believes that the Federal Circuit has left the door open for a sufficiently compelling set of facts which would equitably toll section 2501." *Id.* at 251. And, in holding that equitable tolling is applicable to the limitations period of § 2501, Judge Braden noted that, significantly, the Tucker Act has been amended thirteen times since its enactment in 1887, but Congress has never expressed the intent to bar equitable tolling in Tucker Act suits against the Government. *Land Grantors in Henderson, Union, and Webster Counties, Ky. v. United States*, 64 Fed. Cl. 661, 712 , n. 51 (2006).

Judge Braden's reasoning is instructive ( *Id.*):

> In addition, a breach of contract action brought under the Tucker Act is sufficiently similar to a similar private cause

> of action that consideration of the doctrine of equitable tolling is appropriate and necessary, particularly where "harsh and unjust results" may occur if the statute is not tolled.

Certainly, the same analysis with respect to the similarity of class action causes of action in the private sector should apply to the *Solow* plaintiffs' class action for money damages involving the lump-sum payment statute. The court also considered whether equitable tolling would impose any "undue" administrative burden on the Government, ultimately determining that under the *sui generis* circumstances of the case, equitable tolling is appropriate "where the interests of justice require vindication of the plaintiff's rights. *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 428 (1965)." The court concluded that "the Tucker Act does not prohibit the application of the equitable tolling doctrine nor is it inconsistent with legislative intent." *Id.* at 712.[1]

Those same considerations are applicable here: (1) By virtue of the specific references in the *Archuleta* Complaint and Amended Complaint to the putative class consisting of former employees of *all agencies of the United States*, the Government was made fully aware of its potential liability arising from the claims of former employees of all agencies on April 7, 1999; (2) equitable tolling in class action cases is particularly significant "in the interests of justice" because RCFC 23 enables the aggregation of many small claims (that otherwise would go unresolved) into a single judicial process, thereby permitting vindication of individual rights where the Government potentially has violated congressional statutory mandates[2]; and (3) as we shall demonstrate, *infra*, the Government will not be materially economically prejudiced by the passage of time because all

---

[1] In a subsequent proceeding, Judge Braden noted, "The Court is obligated to decide whether the *Irwin* presumption of equitable tolling applies to Tucker Act claims…."(*Land Grantors*, 74 Fed. Cl. at 524), but realizing that *Kirkendall v. United States,* No. 05-3077, was pending before the Federal Circuit and its probable significance to the question of equitable tolling, Judge Braden decided to defer final determination of the issue until the issuance of the en banc decision of *Kirkendall*.

[2] In *Archuleta,* over 40, 000 claimants have filed claims of less than $200.

of the proof necessary to establish the *Solow* plaintiffs' claims is maintained in electronic databases and requires no human recollection.

The Federal Circuit's important recent decision in *Kirkendall*, holding that equitable tolling applies to the Veterans Employment Opportunities Act of 1988 (VEOA), indicates a continuing favorable approach to upholding the presumption in favor of equitable tolling in suits against the Government as the Supreme Court instructed
in *Irwin*. The *Kirkendall* decision was handed down in March, 2007 with the Federal Circuit decidedly in favor of equitable tolling of the statute at issue there.

While Defendant insists that there can be no equitable tolling under any circumstance, it does not discuss any of the *Irwin, Brockcamp, Frazer,* and *Martinez* line of cases, or attempt to carry its burden of proof to rebut the *Irwin* presumption. We shall now turn to the tolling doctrine promulgated by the Supreme Court in *American Pipe* which conclusively establishes that the *Solow* case presents the right circumstances to apply equitable tolling. Plaintiffs, and the putative class they represent, have played by the rules established by the Supreme Court, and have not slept on their rights.

## B. THE STATUTE OF LIMITATIONS IS EQUITABLY TOLLED UNDER THE DOCTRINE OF *AMERICAN PIPE* AND ITS PROGENY

The Supreme Court in *American Pipe v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), established an equitable tolling rule that is applicable here. Under the doctrine of *American Pipe*, relevantly similar claims of putative plaintiffs are tolled during the pendency of a class action suit in order to further one of the fundamental purposes of Rule 23, FRCP, namely, the avoidance of a multiplicity of individual suits being filed with respect to the same substantive claims.

In *American Pipe*, the Supreme Court held that the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 414 U.S. 544. The doctrine developed further in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), where "the Court considered the sufficiency of notice provided in a massive class action". *Id.* at 172-80. The plaintiff argued that individual notice to the absent class members would have been useless because none of them would have opted out and sued separately because the statute of limitations had already run on their claims. *Id.*at 175-76, 176 n. 13. The *Eisen* Court rejected this argument, noting that "commencement of a class action tolls the applicable statute of limitations as to *all* members of the class," *Id.* at 176 n. 13 (emphasis added) (citation omitted), including, the Court implied, those who opt out following certification. *Id.* at 176. The tolling rule was extended to all members of the asserted class, including those who subsequently filed their own lawsuits in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). The Supreme Court in *Crown, Cork* read *Eisen* as "'conclud[ing] that the right to opt out and press a separate claim remained meaningful because the filing of the class action tolled the statute of limitations under the rule of *American Pipe*.'" *Crown, Cork*, 462 U.S. at 351-52.

Because of this doctrine, putative class members can rely on the filing of a class action to vindicate their rights without having to file protective actions of their own to prevent time-bars until the court has ruled on viability of the initial class action and the limits of the class. The suspension of the time-bar does not violate the underlying policy interests protected by the statute of limitations, and it does indeed promote the policy interests of Rule 23. Statutes of limitations are meant to balance several competing interests. These interests include: (1) repose for prospective defendants; (2) protection for courts from the adjudication of stale claims; (3) smaller

volume of litigation; (4) protection for prospective plaintiffs of a reasonable period of time in which to sue, and (5) enforcement of the substantive laws underlying plaintiffs' claims. Rhonda Wasserman, *Tolling: The American Pipe Tolling Rule and Successive Class Actions*, 58 Fl. Law Rev., 803, 850 (2006).

The Supreme Court took all these policies into account in its landmark decision in *American Pipe.* The Court reasoned that the defendant is not prejudiced by the tolling rule in such circumstances because the filing of the initial class complaint serves to notify the defendant of the specifics of the litigation it may have to defend against and the obligation to preserve evidence, whereas a decision not to toll the limitations period would potentially result in the filing of a multiplicity of duplicative protective actions. *American Pipe* at 554-55.

*American Pipe* and its progeny were, of course, decided in the context of "opt-out" class actions under Rule 23 of the Federal Rules of Civil Procedure, while the case at bar concerns Rule 23 of the United States Court of Federal Claims. RCFC 23 was modeled after the comparable FRCP Rule 23, but there are, however, some significant differences. Notably, this court has chosen to maintain more discretion in the rule's application and has also chosen the "opt-in" class approach to class certification. [3] *Taylor v. United States*, 41 Fed. Cl. 440, 448 (1998). The RCFC 23 Rules Committee Notes, 2002 Revision, state that: "In the main, the court's rule adopts the criteria for certifying and maintaining a class action as set forth in *Quinault Allottee Ass'n v. United States*, 197 Ct. Cl. 134, 453 F.2d 1272 (1972)."

Referring to members of a putative class who choose not to opt-in to a class action, the court in *Quinalt* specifically considered and decided to adopt the opt-in method of class

[3] FRCP 23, Rules Committee Notes, 2002 Revision states: "Additionally, unlike the FRCP, the court's rule contemplates only opt-in class certifications, not opt-out classes.

certification, emphatically noting that other putative plaintiffs who choose not to opt-in to the action were free to file their own suits on the same claims. The *Quinault* court stated: "We are not satisfied, however, that it is necessary or appropriate to bind allottees who fail to join in the suit, or that we should adopt the device of Rule 23 (c) (2), (3) for notice to class members that, unless they request exclusion from the suit by a specified date, the judgment, whether favorable or not, will cover them". *Id.* at 1276. The court concluded: "Finally, it is well to note explicitly that nothing we say or hold in this opinion prevents any Quinalt allottee (or group of them) from instituting another suit on the same claim through the filing of another petition—if that should be desired." *Id.* at 1277.

Therefore, in keeping with the standards set by the Court in *Quinault*, logic dictates that the *American Pipe* tolling principle applies to putative class members of a successive class action, as in the case at bar. To hold otherwise would be to deny efficacy to the Rule. **Plaintiffs contend that under the doctrines of *Irwin* and *American Pipe*, equitable tolling of the limitations period is not only appropriate in successive class actions under certain circumstances, but it is absolutely necessary in this Court order to preserve the integrity of RCFC 23 and to avoid potentially disastrous administrative consequences to the efficient functioning of the United States Court of Federal Claims.** On this point, Judge Posner has said:

> It is true that the statute of limitations is tolled for class members until it is determined that the case cannot proceed as a class action, but that is because a class action is not a mere "invitation to joinder." It is a device centrally concerned with the economies of aggregating small claims, and it would thus be seriously injured by a rule that required all the class members to file separate, protective suits, against the eventuality that the statute of limitations would run during the period when the class status of the putative class action remained undetermined. We want the class members to rely on the filing of the class action rather than to clutter the courts with a multitude of separate suits.

*Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) (internal citations omitted). And, writing for the majority, Justice O'Connor stated: "Nonnamed class members are, for instance, parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). Otherwise, all class members would be forced to intervene to preserve their claims, and one of the major goals of ***class action*** litigation—to simplify litigation involving a large number of class members with similar claims—would be defeated." *Devlin v. Scardelletti*, 536 U.S. 1; 153 L. Ed. 2d 27 at 38 (2002). Similarly, in *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 351(1983), the Court recognized that unless the statute of limitations were tolled by the filing of a class action, "the result would be a needless multiplicity of actions -- precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid."

For the same reason—to balance the policies of the statute of limitations and Rule 23—the doctrine of *American Pipe* has been extended in some of the lower federal courts to encompass the tolling of successive class actions by plaintiffs who were not certified as part of the class in a previously filed class action. In a complex class action involving a class of illegal immigrants certified before the enactment of a statute that abrogated the certification, the 9th Circuit Court of Appeals (citing *Crown, Cork & Seal*) held that the statute of limitations is tolled for all members of the putative class of a previous class action until class certification is denied, and the putative plaintiffs may either (1) pursue their own individual claims, or (2) aggregate their claims and pursue another class action. *Catholic Social Svcs. V. INS*, 232 F.3d 1139, 1149 (9th Cir. 2000) (en banc). Acknowledging that under *Crown, Cork & Seal*, the putative class members would be free to pursue individual claims, the Court stated: "Strictly speaking, this is not a statute of limitations

question at all. It is, rather, a question of whether plaintiffs whose individual actions are not barred may be permitted to use a class action to litigate those actions." *Catholic Social Svcs.* at 1147.

Notably, the Court found that equitable tolling was appropriate since "[p]laintiffs are not attempting to relitigate an earlier denial of class certification, or to correct a procedural deficiency in an earlier would-be class." *Id.* at 1149. This is precisely the same situation that the *Solow* plaintiffs find themselves in; they were never named as plaintiffs in *Archuleta* and they were excluded from the suit by the Settlement Agreement, not because this Court found any legal problem with their inclusion in the class itself, but because the Government ultimately agreed to a Settlement Agreement that limited the class for settlement purposes only to former employees of 17 identified agencies. The Court dismissed the *Archuleta* action with prejudice as to the named plaintiffs and the specified "settlement class" in that suit, not with respect to the claims of unnamed plaintiffs who were not employed by any of the 17 agencies, who never received notice of the settlement, and whose claims were never heard or considered in any manner as part of the *Archuleta* litigation. Moreover, this Court never denied class certification because of any deficiencies of the class action itself—but rather the class settlement was approved as fair, reasonable and in the best interests of the specific class that was carefully and fully defined in the paragraphs I, II (C), IX(A), X(A), and XI of the Settlement Agreement. The Government cannot be heard now to claim that the

Settlement Agreement to which it agreed barred with finality any and all future claims by persons who were not named plaintiffs and who were not former employees of the 17 listed agencies.

In *McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380, 389 (3d Cir. 2002), the Third Circuit followed suit, holding that *American Pipe* tolling in this shareholders' class action should extend to class claims when the previous denial of class certification was based on "reasons

unrelated to the appropriateness of the substantive claims for certification." The Third Circuit distinguished its analysis from *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987), a Second Circuit case where the Court denied tolling to a nearly identical class seeking to relitigate the issue of class certification, where certification had been previously denied due to problems with the class itself.

Two years after *McKowan* was decided, the Third Circuit tolled the statute of limitations for successive class actions in *Yang v. Odom,* 392 F.3d 97 (3d Cir. 2004). Faced with a class action against World Access, Inc., which had been filed by

shareholders who had been members of a putative subclass in an earlier action, the Court held:

> Since *American Pipe*, it has been well-settled that would-be class members are justified—even encouraged—in relying on a class action to represent their interests with respect to a particular claim or claims, and in refraining from the unnecessary filing of repetitious claims. *See American Pipe*, 414 U.S. at 550. The policy objectives of the class action devices—efficient deployment of court resources and the ability to consolidate claims which would otherwise be too small to warrant individual lawsuits—continue to obtain after the rejection by a court of the proposed class representatives.
>
> Drawing the line arbitrarily to allow tolling to apply to individual claims but not to class claims would deny many class plaintiffs with small, potentially meritorious claims the opportunity for redress simply because they were unlucky enough to rely upon an inappropriate lead plaintiff. For many, this would be the end result, while others would file duplicative protective actions in order to preserve their rights lest the class representative be found deficient under Rule 23. Either of these outcomes runs counter to the policy behind Rule 23 and, indeed, to the reasoning employed by the Supreme Court in *American Pipe* and *Crown, Cork & Seal.*

*Id.* at 111.

Then Circuit Judge Alito concurred in the result with respect to permitting tolling where denial of the prior class certification was not based on deficiencies of the class itself. *Id.* at 112.

Alternatively, the Court of Appeals for the Federal Circuit has also held that tolling in class actions is appropriate not necessarily as a matter of equitable principles, but rather in furtherance

of preserving the structural integrity of Rule 23. In *Stone Container Corp. v. United States*, 229 F.3d 1345, 1356 (Fed. Cir. 2000), the Court held that the statute of limitations was tolled by the filing of a previous class action, stating further that the tolling period expired when the first suit was dismissed. Moreover, the Court introduced another element into the analysis, stating that "*American Pipe* and *Crown, Cork & Seal* were not based on judge-made equitable tolling, but rather on the Supreme Court's interpretation of Rule 23." This analysis suggests that the doctrine is not an exercise of equity, but rather an interpretation designed to give efficacy to Rule 23.

**In sum, Plaintiffs contend that tolling of 28 U.S.C. §2501 in the case at bar from April 7, 1999 to the approval of the Settlement Agreement in the *Archuleta* action on June 1, 2006 is not only appropriate--either as a matter of equitable principles or as a rule in interpretation of RCFC 23--, but, indeed, as the only fair result in this case in the "interests of justice".**

## IV. PLAINTIFFS' CLAIMS ARE NOT BARRED BY LACHES.

The doctrine of laches arose long ago in equity courts, such courts not being bound by statutes of limitation. It was premised on the Latin phrase meaning "equity aids the vigilant, not those who slumber on their rights." *Cornetta v. United States*, 851 F. 2d 1372, 1375 (Fed. Cir. 1988)(en banc). The doctrine is based upon the public policy which requires for the peace of society the discouragement of stale claims. *Id.* at 1376.

The United States Court of Appeals for the Federal Circuit revisited and clarified the laches doctrine in 1988 in *Cornetta v. United States*. Although *Cornetta* involved military back pay and reinstatement, the same analysis of the laches doctrine has been applied to cases between the government and civilian employees. *See Hoover v. Department of Navy*, 957 F. 2d 861 (Fed. Cir.

1992). The Court said that dismissal of a claim on the ground of laches requires that both elements of a two-pronged inquiry be satisfied: (1) Unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to defendant as a result of the delay. *Cornetta* at 1377-78; *see also Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F. 2d 1157, 1161 (Fed. Cir. 1993).

### A. PLAINTIFFS DID NOT DELAY IN FILING SUIT BECAUSE *ARCHULETA* WAS PENDING

In *Cornetta*, the Government claimed that plaintiff's delay in filing suit for seven years was unreasonable. But the Court reiterated that the mere fact that time has elapsed since the cause of action accrued is not sufficient, nor is the relevant statute of limitations determinative. *Id.* at 1377-78. The length of time that is considered unreasonable depends on the circumstances of each case. *Cane Tennessee, Inc. v. United States*, 44 Fed. Cl. 785, 795 (1999).

As discussed at length above, Plaintiffs in the case at bar cannot be accused of unreasonable delay when it was eminently reasonable for them to await the decision regarding class certification in the *Archuleta* litigation. In *American Pipe,* the Supreme Court applied the tolling rule not only to those who specifically relied on the pending class action:

> We think no different a standard should apply to those members of the class who did not rely upon the commencement of the class action (or who were even unaware that such a suit existed) and thus cannot claim that they refrained from bringing timely motions for individual intervention or joinder because of a belief that their interests would be represented by the class. 414 U.S. at 551.
>
> Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case. It follows that even as to asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings, the later running of the applicable statute of limitations does not bar participation in the class action and its ultimate judgment. 414 U.S. at 552.

## B. THE DEFENDANT HAS NOT BEEN MATERIALLY PREJUDICED.

The second prong of the laches analysis is whether the defendant has been so materially prejudiced by the delay as to make continuation of the suit fundamentally unfair. In *Cornetta*, the Court delineated two types of prejudice, defense and economic, that may stem from plaintiff's delay.

### 1. Defense Prejudice

The first is "defense prejudice," meaning that the defendant may be unable to mount a defense based on loss of records, destruction of evidence, or the fading memories of witnesses. *Cornetta* at 1378. But this type of prejudice can rarely be successfully invoked in an employment case. Justice Marshall spoke about defense prejudice and record keeping in the context of a Title VII employment discrimination case in *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975), (Marshall, J., concurring). Stating that the defendant employer is most likely to have the relevant personnel records, Justice Marshall opined: "Rarely, if ever, could an employer plausibly invoke the doctrine of laches on the usual ground that passage of time has put beyond reach evidence or testimony necessary in his case." *Id.* at 440-41.

Certainly Justice Marshall's statement rings even truer in the case at bar where Defendant is the United States Government; moreover, Defendant was put on notice of the obligation to preserve evidence as to all agencies when *Archuleta* was filed in 1999.

The United States Court of Appeals for the Federal Circuit addressed the subject of defense prejudice in a dispute between the government and a civilian employee in *Hoover v. Department of Navy*, 957 F. 2d 861 (Fed. Cir. 1992). Plaintiff James Hoover appealed the final decision of the Merit Systems Protection Board more than five years after he was demoted; his petition was dismissed on the ground of laches. On appeal, the Merit System Protection Board cited defense

prejudice, stating that the relevant events would be difficult to reconstruct because of (1) the extensive reorganization and growth of the agency's Data Processing Department, and (2) the retirement of witnesses. The Court of Appeals rejected this argument and reversed the dismissal, stating that just because it is burdensome to produce evidence does not mean that it is prejudicial to defendant. *Id.* at 864.

In the case at bar, Defendant states that locating former employees of the agencies involved "will be extremely difficult if not impossible and it is likely that the passage of time will have dulled their memories concerning these calculations." Def.'s Motion to Dismiss, p.11-12. This is merely a statement by counsel, not evidence. Defendant knows full well that all of the evidence necessary to prove Plaintiffs' claims is maintained electronically. For example, Ms. Solow claims that when she retired from the Resolution Trust Corporation, she was paid her lump-sum payment for unused annual leave at the rate of basic pay she was receiving on the date of her retirement rather than at the increased rate of pay she would have received by virtue of the across-the-board pay increase applied to all GS employees during the period of her unused annual leave, as 5 U.S.C. § 5551 (a) unquestionably required. Defendant can not, and does not, claim that the electronic record has been erased and destroyed of the precise amount of Ms. Solow's lump-sum payment, the number of hours of her unused annual leave in her account as of the date of her retirement, and the amount of the across-the-board pay increase applicable to her pay rate and grade during the period of her unused annual leave. Furthermore, it is the same argument that was soundly rejected by the Federal Circuit in *Hoover.* 975 F.2d at 864. Locating former employees of these agencies is not imperative for the case to proceed; records kept by the Government agencies are adequate evidence.

**2. <u>Economic Prejudice</u>**

The second type of prejudice is "economic prejudice," in which the inquiry focuses on consequences—usually monetary—to the Defendant should Plaintiff prevail. In *Cornetta*, the defense relied on a "presumption of prejudice," that the Government's liability for back pay and potential liability for increased retirement pay was so unjustifiably prejudicial to the Government as to shift the burden of proof. The court disposed of the notion of such a presumption of prejudice in employment cases, which would in effect shift the burden of proof to plaintiff to show a lack of prejudice after a lengthy delay. Citing Federal Rule of Civil Procedure 8(c), the court pointed out that laches is an affirmative defense, and "accordingly, the burden of proving prejudice rests with the defendant." *Id.* at 1380; *see also Six v. United States*, 71 Fed. Cl. 671, 681 (2006); *LaForge v. Budd Construction Co., Inc. v. United States*, 48 Fed. Cl. 566, 570 (2001). Reasoning further that presumptions are based on considerations of fairness and public policy, the court found no justification to benefit to the stronger party (the Government) with such a presumption. The court stated: "In the usual case, the Government is both the stronger party and the party best able to set out facts relevant to the prejudice inquiry. The claimant is at a decided disadvantage. It is simply inequitable, and it is equity we are talking about." *Cornetta* at 1380. The Court ruled that prejudice may not be presumed from the length of a claimant's delay, and further held that the potential receipt of back pay or increased retirement benefits is insufficient to establish economic prejudice. *Id.* at 1382-83.

The Court of Appeals for the Federal Circuit has gone even further, stating that meeting the threshold requirements of unreasonable delay and material prejudice is still not enough to dismiss plaintiff's claim on the ground of laches. "Laches remains an equitable judgment of the trial court in light of all the circumstances. Laches is not established by undue delay and prejudice. Those

factors merely lay the foundation for the trial court's exercise of discretion. Where there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied." *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F. 2d 1020, 1036 (Fed. Cir. 1992).

**3. <u>Laches And The Statute Of Limitations</u>**

The general rule is that the application of laches must be considered in light of the facts of each case. *Cornetta* at 1379. Laches must also be considered separately and apart from the statute of limitations. *Id.* at 1378. But significantly, the Federal Circuit has noted that "when a limitation on the period for bringing suit has been set by statute, laches will not generally be invoked to shorten the statutory period." *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F. 2d 1157, 1161 (Fed. Cir. 1993).

In order for laches to apply where plaintiff's claim has been filed within the statute of limitations, the Defendant must allege and prove specific "extraordinary circumstances." *Six v. United States*, 71 Fed. Cl. 671, 681 (2006). Absent such extraordinary circumstances, which remain unspecified, this court and the Court of Appeals for the Federal Circuit generally refuse to invoke the doctrine to dismiss a claim whose limitation period has been set by statute and has not run. *Id.*; *see also Advanced Cardiovascular Systems*, 988 F. 2d 1157, 1161 (Fed. Cir. 1993); *CW Government Travel, Inc. v. United States*, 61 Fed. Cl. 559, 569 (2004).

The laches defense has also been defeated in other federal circuits and in other contexts where the statute of limitations was equitably tolled. In *Clymore v. United States*, 217 F.3d 370 (5th Cir. 2000), plaintiff Craig Clymore challenged the district court's conclusion that his action to recover personal property seized by the government was barred by laches. On appeal to the 5th

Circuit Court of Appeals, the court held that the statute of limitations was equitably tolled because the plaintiff "has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Id.* at 375 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). The court then went on to consider the Government's argument that laches barred the claim. Conducting the usual two-part inquiry and finding that the government had not established the critical element of prejudice, the court held that laches did not bar Clymore's claim. *Clymore* at 377.

In conclusion, Plaintiffs contend that because the Statute of Limitations has been equitably tolled in this case, and because there are no extraordinary circumstances with respect to unreasonable delay by Plaintiffs, or any material prejudice to the Government, Defendant's affirmative defense of laches must fail.

WHEREFORE, plaintiffs respectfully submit that defendant's motion to dismiss should be denied.

/S/_IRA M.LECHNER_____

IRA M. LECHNER
Attorney for Plaintiffs

19811-4th Place
Escondido, CA 92029
Phone: 858-864-2258
Fax; 760-839-5755

Dated: May 1, 2007

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 1st day of May, 2007, a copy of the foregoing "PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS", was filed electronically in the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

**S/IRA M. LECHNER**
Ira M. Lechner