IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| Jean-Robbin Solow, et al., Plaintiffs, | ) | |
| v. | ) | Case No. 06-872C |
| | ) | Senior Judge Loren A. Smith |
| The United States, Defendant. | ) | |

DECLARATION OF BRENDA ROBERTS

I, Brenda Roberts, declare as follows:

1. I am currently the Acting Manager of the Leave and Special Payments Group, in the Center for Pay and Leave Administration ("CPLA"), Strategic Human Resources Policy Division ("SHRP") of the Office of Personnel Management ("OPM"). Concurrently, I am also Team Leader for the Pay and Leave Standardization Team, CPLA, SHRP, OPM. OPM is located at 1900 E Street, NW, Washington, DC.

2. I have been in the position of Acting Manager for 2 months. I have been in the position of Team Leader for 2 years, 9 months.

3. Prior to the Team Leader position, I held the position of Human Resources Specialist, Center for Pay and Performance Policy, Workforce Compensation and Performance Service, Pay and Leave Administration Division, OPM. This position was within the same office of my current position. The organizational titles have changed pursuant to an agency-wide restructuring in 2002. I held that position from 1991 to 2004.

4. I am familiar with the statute and regulations governing payment of the lump-sum payment for accumulated and accrued annual leave established under 5 U.S.C. § 5551 (hereinafter "lump-sum payment for annual leave").

5. My responsibilities as Human Resources Specialist included contacting agencies and payroll providers for the purpose of administering Governmentwide pay and leave policies, including providing advice and services to agencies, human resources and payroll providers, and employees. My duties included drafting legislative proposals and regulations, drafting agency memoranda, responding to congressional, agency, and employee inquiries, providing policy advice to senior level management, and developing pay tables.

6. During the process of gathering information prior to the issuance of the 1997 proposed regulations governing lump-sum payments for annual leave, I contacted agencies to collect data regarding types of payments agencies included in and excluded from the lump-sum payment for annual leave. These agency contacts were effected pursuant to issuance of an Interagency Advisory Group

memo requesting this information. I collected data from agencies pursuant to the requests made in this memorandum.

7. During the settlement negotiations conducted in the matter of Archuleta v. U.S., C.A. No. 99-205C, I assisted OPM's Office of the General Counsel ("OGC") in supporting the Department of Justice ("DOJ") in narrowing the categories of payments which should properly be included in the lump-sum payment for annual leave. In addition, I assisted in gathering data used to estimate liability and settlement payments under the terms of the then-proposed settlement agreement. This data collection effort included contacting agency human resources and payroll providers to determine what types of pay the agencies included in the lump-sum payment for annual leave.

8. I attempted to gather relevant data from OPM's Central Personnel Data File ("CPDF"), but discovered that this file does not contain information regarding lump-sum payments. Specifically, the CPDF does not collect data from agencies indicating the date a lump-sum payment was made, the amount of the lump-sum payment, the number of hours of annual leave it covers, or what types of payments were included in it.

9. Further, during the period that settlement negotiations were being conducted in Archuleta, I sampled data from agency human resources and payroll providers for purposes of determining agency practices for paying lump-sum payments for annual leave and estimating potential Governmental liability. I found that in a substantial number of cases, agencies could not find employee records associated with the potential plaintiffs. Generally, agencies are required to retain payroll data for no more than 3 years. I found that, in many cases, agencies had not retained records for a number of reasons, including: consolidation of payroll systems, organizational restructuring, misplacement of employee records, and periodic destruction of employee records after the expiration of the agency's document retention period.

10. Even in cases where agencies maintained employee records necessary to determine how, when, and in what amount the lump-sum payment for annual leave was calculated, I found that many agencies paid the annual statutory increase out in a separate, supplemental check. Typically, this supplemental check was processed manually, and agencies did not document this supplemental payment or retain records regarding this supplemental payment.

11. I have discussed with DOJ attorneys the issues raised concerning the availability of data necessary to assess liability in the above-captioned action.

12. Based on my experience in collecting data as a part of my general job responsibilities, as well as my experience in collecting data during the process of estimating liability under Archuleta, I have concluded that the data necessary to assess the Government's potential liability for lump-sum payments for annual leave made to former employees would be extremely difficult to gather. This information was only sporadically and scarcely available during the settlement negotiation for the Archuleta suit. Given that another 6 years has passed since we last attempted to collect such data and that there has been further consolidation of payroll systems during the interim period, I believe that much of this data is no longer available. To the limited extent to which it is available, it would be a huge burden on the Government to collect such data, as such an effort would require manual retrieval and review of

employee records from the applicable records centers, which also have likely disposed of this data by now.

I declare under penalty of perjury that the foregoing is true and correct.
Dated at Washington, D.C., this 31 day of May, 2007.

Brenda Roberts
Brenda Roberts