**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **GERALD K. KANDEL et al.,**<br><br>on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>**THE UNITED STATES**,<br><br>Defendant. | **C.A. No. 06-872C**<br><br>**Senior Judge Smith** |

# <u>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING DEFENDANT'S MOTION TO DISMISS</u>

IRA M. LECHNER
Attorney for Plaintiffs
19811-4th Place
Escondido, CA 92029
Phone: 858-864-2258
Fax; 760-839-5755

Dated: MARCH 17, 2008

# TABLE OF CONTENTS

**I. <u>Introduction</u>** **Page 3**

**II. <u>THE UNDISPUTED FACTS PERTINENT TO RECONSIDERATION</u>** **Page 7**

**III. <u>DEFENDANT GROSSLY MISCHARACTERIZES THE EFFECT OF THE DECISION IN JOHN R. SAND & GRAVEL AS TO THE TOLLING OF THE STATUTE OF LIMITATIONS IN A CLASS ACTION CASE</u>** **Page 8**

**IV. <u>*AMERICAN PIPE* TOLLING IS CONSISTENT WITH THE GOALS OF RCFC 23</u>** **Page 16**

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) *Passim*

*Archuleta v. United States*, Fed. Cl. No. 99-205C *Passim*

*Barbieri v. United States*, 15 Cl. Ct. 747 (1988) *Passim*

*Catholic Social Svcs. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (en banc) Page 15

*Crown, Cork & Seal v. Parker*, 462 U.S. 345 (1983) *Passim*

*Devlin v. Scardelletti*, 536 U.S. 1; 153 L. Ed. 2d 27 (2002) Page 14

*Elmore v. Henderson*, 227 F.3d 1009 (7th Cir. 2000) Page 18

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990) *Passim*

*John R. Sand & Gravel Co.* ***v.*** *United States*, 128 S.Ct. 750, 169 L. Ed. 2d 591 (2008) *Passim*

*Quinault Allottee Ass'n v. United States*, 453 F.2d 1272 (Ct. Cl. 1972) Page 16

*Soriano v. United States*, 352 U.S. 270 (1957) Page 10

*Stone Container Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000) Page 18

*Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004) Page 19

*Wood-Ivey Systems Corp. v. United States*, 4 F.3d 961 (1993) Page 18

## I. Introduction

The *Archuleta* case began as an action against all agencies of the United States to remedy violations of 5 U.S.C. § 5551(a) with respect to the computation of lump-sum payments for unused annual leave. After many years of negotiation, the parties settled only the claims of the former employees of the largest seventeen federal government agencies embodied in a Settlement Agreement approved by this Court on June 1, 2006. The Court certified a class restricted to the employees of those seventeen agencies, and in so doing, the Court narrowed the original class sought by the plaintiffs.

Unquestionably, this Court did not deny class certification with respect to the claims of former employees of all of the other federal agencies because their claims were never litigated nor resolved in *Archuleta*. Thereafter, on December 22, 2006, the current plaintiffs filed an identical successor class action suit entitled *Solow et al. v. United States* with respect to those employees of federal agencies (other than the VA) that had not been settled in the *Archuleta* case, incorporating the limitations period fulfilled by the filing in *Archuleta*. [1]

---

[1] The former employees of the VA filed their own class action Complaint in *Robert M. Athey et al. v. United States*, No. 99-2051C. Ms. Solow and plaintiffs who were formerly employed by other agencies that were not settled in *Archuleta* attempted to intervene in the *Athey* case. This Court suggested that Ms. Solow should file her own case rather than intervene in the *Athey* case. Plaintiffs' counsel noted that the putative plaintiffs had no opportunity to file their own claims in this court unless they fortuitously heard about the existence and/or settlement of the *Archuleta* case.

> THE COURT: Well, notice wouldn't be the problem, because in reading that paragraph that you read, "All such employees who retired, died, or separated beginning April 7, 1993, and before September 1999 from employment by an agency, establishment, or instrumentality thereof of the seventeen federal agencies identified in Exhibit 4…". So it seems to me the class is those seventeen agencies identified in Exhibit 4, the employees of those agencies who meet those years. Ms. Solow seems to me [is] not in a class, and therefore, she can go back and file her own suit or her own try to seek class certification of her class but not join in this litigation, which seems to me over but for the seventeen people who are at the VA.

Transcript, *Athey et al. v. United States*, December 12, 2006, p. 21.

.

Plaintiffs' action is now entitled *Kandel et al. v. United States* upon the voluntary withdrawal of Ms. Solow as lead putative plaintiff. On August 21, 2007, the Court issued its Opinion and Order denying Defendant's Motion to Dismiss. The Court held that the class certified in *Archuleta* was limited specifically to the employees of the seventeen largest agencies. Defendant does not challenge that critically important ruling in its Motion for Reconsideration. The Court premised its ruling with respect to the statute of limitations on the well-settled tolling rule established in *American Pipe v. Utah*, 414 U.S. 538 (1974) which has been honored by this and every other federal court in the nation.

Now Defendant has moved the Court to reconsider its Opinion and Order. The Court has construed Defendant's motion as a renewed Motion to Dismiss under RCFC 12(b)(1). Completely ignoring the prior history of the *Archuleta* case, Defendant simplistically insists that the class represented by the *Kandel* plaintiffs filed their case too late on December 22, 2006 in violation of the six-year limitations period. Defendant refuses to acknowledge that *Archuleta* was a "representative" action that included the entire putative class of *Kandel* plaintiffs, and under the *American Pipe* Doctrine, the limitations period of Section 2501—acknowledged to be a "jurisdictional" statute—was fully satisfied by that filing in April, 1999.

The Supreme Court's precedent-setting tolling rule in class action cases is unambiguous: "Thus, the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs. To hold to the contrary would frustrate the principal function of a class action suit, because then the sole means by which members of the class could assure participation in the judgment if notice of the suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as plaintiffs—precisely the multiplicity of activity which

Rule 23 was designed to avoid in those cases where a class action is found 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *American Pipe* at 551.

As discussed more comprehensively below, there is no evidence or logic that the Supreme Court's decision in *John R. Sand & Gravel Co. v. United States*, 128 S.Ct. 750 ( 2008), changes the impact of *American Pipe* tolling in class action cases when the initial "representative" action was filed within the applicable statute of limitations period.

Defendant relies exclusively on *Sand & Gravel*. It argues that inasmuch as Section 2501 now has been held definitively to be "jurisdictional," the Supreme Court's recent opinion has the effect of invalidating this Court's earlier decision. Defendant's analysis of *Sand & Gravel* rests on the Supreme Court's discussion of the *Irwin* Doctrine as it relates to non-class action cases that are filed late. The Supreme Court determined that *Irwin* is not applicable to Section 2501 because it dealt with a different limitations statute, Section 2401. The essence of Defendant's argument is as follows: "In sum, the Supreme Court's decision in *John R. Sand & Gravel* precludes any reliance on *Irwin* for the proposition that Section 2501 is susceptible to equitable tolling." Def.'s Motion for Reconsideration, pp.3-4.

But in denying the Government's Motion to Dismiss, this Court based its ruling on the *American Pipe* Doctrine of tolling of class action cases, not on the *Irwin* Doctrine. And Defendant even admits that this Court "cited for support to the Supreme Court's decision in *American Pipe v. Utah*." Def.'s Motion for Reconsideration, p. 1. The *American Pipe* Doctrine is enshrined in class action jurisprudence. While this Court used the generic term "equitable tolling" in denying Defendant's Motion to Dismiss, there can be no doubt that the Court relied <u>exclusively</u> on *American Pipe's* tolling rule in class action cases which, this Court reasoned, suspended the

running of the statute of limitations when the *Archuleta* case was filed, and remained in effect until the *Archuleta* Settlement Agreement was approved on June 1, 2006. This Court held: "Applying *American Pipe*, the Archuleta suit would have included the Plaintiffs in this case had the litigation continued. Therefore, the previous suit equitably tolled the statute of limitations for the instant Plaintiffs until the settlement severed their claims."(emphasis supplied).

It is equally clear that this Court DID NOT premise its decision on the *Irwin* Doctrine of utilizing a rebuttable presumption in favor of compliance with a statute of limitations in non-class action cases against the United States. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). There is no application whatsoever of *Irwin's* "rebuttable presumption" rule in this Court's Opinion. While *Plaintiffs* advanced that alternative argument, this Court wisely relied solely on *American Pipe* rather than *Irwin*.

Defendant's Motion for Reconsideration is frivolous in that it is premised upon a bogus straw-man argument about the continued validity of the *Irwin* Doctrine in non-class action cases involving Section 2501, even though this Court did not rely upon the *Irwin* Doctrine in reaching its decision. And unlike the *Sand & Gravel* case, *Kandel* is a class action.

We respectfully submit that *Sand & Gravel* did not have the effect of nullifying the *American Pipe Doctrine.* The foundation of *American Pipe*, and subsequent cases expanding on that decision, is that class action cases are *sui generis* when considering the limitations period applicable to putative class members. As discussed below, if the date of filing of the initial class action is within the applicable statute of limitations, it is settled law that the putative class members are treated, in effect, provisionally as parties for the limited purpose of compliance with the statute of limitations. Under the *American Pipe* Doctrine, if the original class action Complaint was filed within the limitations period, the jurisdictional nature of the statute is irrelevant with

respect to all putative class members because of the representative character of the class action suit.

As the Supreme Court has repeatedly noted, as well as this Court in its Opinion denying the Motion to Dismiss, the *American Pipe* rule fulfills the underlying function of statutes of limitations by providing the defendant with specific notice of the claims as well as the broad identity, composition, and number of the putative class members. Moreover, case after case has emphasized that the fundamental purposes of Rule 23 would be crippled if all putative class members could not rely on the filing date of the initial class action suit by their class representatives.

Procedurally, *American Pipe's* tolling rule is really a matter of claims management within the context of enforcement and application of the court's own rules, not the consideration of equitable principles applied to stale cases. In sum, *John Sand & Gravel's* facts and holding are irrelevant to the application of *American Pipe* tolling in a class action case.

## II. **THE UNDISPUTED FACTS PERTINENT TO RECONSIDERATION**

First, Defendant does not dispute the unquestionable fact that the plaintiffs in *Archuleta* filed their class action within the appropriate statute of limitations period.

The *Archuleta* case was filed on April 7, 1999. The class action claims contained in the Complaint specifically related to the six-year limitations period between April 7, 1993 and September 7, 1999, thereby satisfying the limitations requirement of Section 2501 as a "jurisdictional" and "absolute" statute as to each and every member of the putative class represented by over 100 plaintiffs who joined the suit as class representatives in *Archuleta All of* those named plaintiffs brought the case "on behalf of" and as "representatives of" the entire putative class, and each of them retired or separated during that six-year period. Pursuant to the *American Pipe*

Doctrine, the class action claims encompassed by the instant *Kandel* action are limited to the period beginning April 7, 1993, less the period of time between June 1, 2006, when the class was narrowed by the Court's approval of the Settlement Agreement and either December 22, 2006, when the *Solow/Kandel* Complaint was filed, or when the *Solow* plaintiffs attempted to intervene as class representatives in the *Athey* class action against the VA.

Unlike the typical case where some courts have invoked "equitable tolling" to overcome the failure of plaintiffs to file their action within the statute of limitations period (so called "stale" claims), the *Archuleta* plaintiffs clearly filed within the Tucker Act's "jurisdictional" six-year limitations period as *"representatives of"* and "*on behalf of*" the entire putative class.

Second, the claims of the putative class alleged in the case at bar are identical to those settled in *Archuleta*. This action clearly is an identical successor to *Archuleta*.

Third, no court has denied a Motion to Certify a Class Action either in the *Archuleta* case or in the *Solow/Kandel* case, thereby removing from consideration any argument with respect to "piggybacking" a new class action upon the denial of class action claims in an earlier case.

## III. DEFENDANT GROSSLY MISCHARACTERIZES THE EFFECT OF THE DECISION IN *JOHN R. SAND & GRAVEL* AS TO THE TOLLING OF THE STATUTE OF LIMITATIONS IN A CLASS ACTION CASE

Defendant's blanket assertion that Plaintiffs' claims are barred by the statute of limitations contained in 28 U.S.C. § 2501 is contrary to well-established precedent that the tolling rule of *American Pipe* applies when the initial class action case is filed within the limitations period. *John R. Sand & Gravel* has no bearing whatsoever on the application of that rule in class action cases filed pursuant to RCFC 23, or pursuant to FRCP 23 in the United States District Courts.

Defendant grossly mischaracterizes the Supreme Court's holding in *John R. Sand & Gravel* as binding precedent for the following reasons:

(1) It was not a class action case;

(2) The Supreme Court made no mention whatsoever of its own rule of tolling promulgated in *American Pipe,* or in any of its progeny;

(3) The Supreme Court even noted: "Courts do not normally overturn a long line of earlier cases without mentioning the matter." *Sand & Gravel.,* 169 L. Ed. 2d 591 at 598.

(4) Certainly, *Sand & Gravel* did not have the effect of overruling the Court's own tolling doctrine in class action cases as announced in *American Pipe* and *Crown, Cork & Seal*;

(5) The decision in *Sand & Gravel* did not subvert, or even discuss, the power of a federal court to effectuate the function of it own rules in order to be "consistent with the goals of judicial efficiency promoted by class actions," as held by this Court in its earlier denial of the Government's Motion to Dismiss;

(6) On the facts, *John R. Sand & Gravel* was not even a case that involved any claim of equitable tolling of the statute of limitations. Indeed, Defendant admits that "the issue in *John R. Sand & Gravel* was waiver rather than equitable tolling of the statute of limitations…." Def.'s Motion for Reconsideration, p. 2.

There can be no doubt that *John R. Sand & Gravel* was a garden-variety case as to whether the plaintiff had missed the limitations period, depending on the Court's interpretation of the accrual date of the underlying takings claim. The Supreme Court settled any ambiguity about the "jurisdictional" nature of Section 2501 not because the case concerned tolling principles in any way, but only because the Government had waived its limitations defense in the Court of Federal Claims. The Court of Appeals for the Federal Circuit invoked the defense *sua sponte* based upon

the suggestion in an *amicus* brief. It is far too early to tell the impact of this limited holding with respect to waiver by the United States as to whether certain traditionally equitable considerations warrant extending a limitations period in future *non-class action cases* that present appropriate facts (such as fraud or trickery on the part of agents of the United States that induced the plaintiff to delay filing a claim, or if a late-filing plaintiff acted with due diligence but filed a defective pleading during the limitations period). **But there is neither logic nor evidence to support the conclusion that *John R. Sand & Gravel's* limited holding with respect to "waiver" in a non-class action case has the *prospective* effect of reversing and voiding thirty-four years of broadly-applied precedent that the filing of an initial Rule 23 class action Complaint within the applicable limitations period tolls the statute of limitations as to the putative class members until the class is denied, particularly where--as here-- the original class was not denied, but rather narrowed by virtue of the Settlement Agreement.**

The well-settled precedent of *American Pipe* tolling has been applied regardless of the jurisdictional nature of the subsequently invoked statute of limitations, or whether the defendant is the United States. We shall demonstrate that there simply is no nexus between the Supreme Court's decision settling the "jurisdictional" aspect of Section 2501 and the application of *American Pipe* tolling in class action cases when the initial "representative" action was filed within the applicable statute of limitations period. When the Supreme Court decided *American Pipe* and *Crown, Cork & Seal v. Parker*, 462 U.S. 345 (1983), there was no doubt that the statute of limitations of 28 U.S.C.§ 2501 was absolute and "jurisdictional." *Soriano v. United States*, 352 U.S. 270 (1957). Yet, in *Barbieri v. United States*, 15 Cl. Ct. 747 (1988), the Court unequivocally applied the *American Pipe* rule to putative plaintiffs in a successor class action case. The Government argued that the statute of limitations should only be tolled as to individuals

specifically named in the complaint. *Barbieri*, 15 Cl. Ct. 747, 750 (1988). The Court instead held that most courts view the initiation of a class action as a truly representative action, and hence the statute of limitations is tolled for every class member regardless that his or her individual identity as a class member is not established until the subsequent court-regulated procedure of the management of individual claims.

In analyzing the tolling rule applied to a class action case under Rule 23, the court in *Barbieri* took note that "the Supreme Court in American Pipe referred to it as 'a truly representative suit'—one in which the filing of a timely complaint 'commences the action for all members of the class as subsequently determined'". *Id.* The Claims Court cited *Union Carbide & Carbon Corp. v. Nisley*, 300 F.2d 561, 590 (10th Cir. 1961) (quoting *York v. Guaranty Trust Co.*, 143 F.2d 503 (2d Cir. 1944), rev'd on other grounds,326 U.S. 99 (1945)), as follows:

> If a class action is maintainable as such, it is incongruous to say that the absent members, who are represented by those present, may not rely upon the commencement of the action by their brethren to toll the running of the statute. This would only serve to 'convert the rule into a trap' for those who have expeditiously allowed their rights to be maintained by a class action.

Judge Weise reasoned that while governing case law—specifically citing *Soriano*—insists "upon a strict construction of the court's statute of limitations," *Barbieri* at 752, "this jurisprudence has no bearing on the issue which confronts us here. Contrary to the Government's view of it, the problem we now deal with does not involve the court's power to 'liberalize' the statute of limitations but rather with its power to avoid a multiplicity of suits through a representative action. And that is a question that was long ago settled in the court's favor. *Western Cherokee Indians v. United States*, 27 Ct. Claims 1, 54 (1891), aff'd sub nom. *United States v. Old Settlers*, 148 U.S. 427,479-80, 13 S.Ct. 650, 671-72, 37 L.Ed. 509 (1893), *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 137-138, 453 F.2d 1272, 1274 (1972)." *Id.*

Clearly, the Court considered the application of the *American Pipe* Doctrine well within its historical purview to "use such machinery as courts of more general jurisdiction are accustomed to employ under similar circumstances to aid in their investigations." *Id.* (quoting *U.S. v. Raymond*, 92 U.S. 651 (1875). In addition, the Court observed that the tolling rule "corresponds with historical practice," citing *Richmond v. Irons*, 121 U.S. 27 (1887), which concerned a suit to remedy alleged fraud by disgruntled creditors against a bank's shareholders. There, the Supreme Court held that the statute of limitations was tolled as to each creditor who could prove that he was a member of the class:

> The creditor, having established his claim, became entitled to the benefit of the proceeding as virtually a party complainant from the beginning, and the time that had elapsed from the filing of the bill to the proof of his claim would not be counted as part of the time relied on to bar the creditor's right to sue the stockholders. In other words, if he proves himself to be a creditor with a valid claim against the bank, he becomes a complainant by relation to the time of the filing of the bill.

*Id.* at 52.

Finally, in *Richmond v. Irons*, the Supreme Court quoted the English case of *Sterndale v. Hankinson*, 1 Simons, 393 (1827): "Every creditor has to a certain extent an inchoate interest in a suit instituted by one on behalf of himself and the rest, and it would be attended with mischievous consequences to estates of deceased debtors if the court were to lay down a rule by which every other creditor would be obliged to either file his bill or bring his action." *Richmond*, 121 U.S. 27, at 53-54.

Judge Wiese summarized the holding of *Barbieri:* "Given this historical practice, it can hardly be claimed that we reach new ground in now holding that the class action rule in this court contemplates a representative suit the commencement of which tolls the limitations period for all potential members of the class….It being clear, therefore, that the court has the power to entertain

class actions, we think it follows, from the representative nature of such a suit, that its commencement tolls the running of the statute of limitations for all purported members of the class." *Barbieri* at 751-752.

The nineteenth century cases, as well as *American Pipe*, *Crown*, *Cork & Seal*, and *Barbieri*, reflect an essential difference in the underlying judicial theory between the tolling doctrine in class action cases, and the application of equitable considerations in non-"representative" actions to ameliorate the potential case-ending impact of statutes of limitations. Courts of equity could consider special factual circumstances in weighing appropriate equity that would be barred if the court found that the statute in question was "jurisdictional" and that the limitations period embedded in it was "absolute." On the other hand, the *American Pipe* tolling rule operates from an entirely different premise: the *American Pipe* tolling doctrine takes effect when the first class action is filed within the applicable limitations period because, at that point in time, even a "jurisdictional" or "absolute" statute of limitations such as Section 2501 has been satisfied. The claims of the entire putative class are not "stale" when the class action is filed, and the defendant is put on notice at that time as to the substance of the claims as well as the general identity of the potential claimants and their approximate number.

As the Supreme Court so definitively stated, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe v. Utah*, 414 U.S. at 554 (*emphasis supplied*). And as this Court has found: "Applying *American Pipe*, the Archuleta suit would have included the Plaintiffs in this case if the litigation had continued." Opinion and Order, p. 4.

*American Pipe* tolling is not applied *after* the limitations period of Section 2501 has expired to revive a case that the court would not have jurisdiction to entertain, as discussed generally in *Sand & Gravel* as dicta. Rather, the *American Pipe* tolling doctrine acknowledges that each of the putative class members became "virtually a party complainant from the beginning," as noted 123 years ago by the Supreme Court. *Richmond* at 52. Therefore, the "jurisdictional" nature of Section 2501 was strictly complied with when the *Archuleta* case was filed entirely within the six-year limitations period on April 7, 1999. From that date until the June 1, 2006 approval of the settlement in *Archuleta*, the running of the statute remained suspended by operation of law. Then, once the class had been narrowed, the statute began running again until the filing of the successor Complaint in *Solow/Kandel* on December 22, 2006. As applied to the *Kandel* class, the original starting date of the coverage of the *Archuleta* case (April 7, 1993) moved six months and twenty-one days later to October 28, 2006, by virtue of the period between June 1, 2006 and December 22, 2006.

This fundamental difference between the *American Pipe* tolling rule and equitable tolling to excuse a late filing also was noted by Justice O'Connor, writing for the majority, in *Devlin v. Scardelletti*, 536 U.S. 1, 153 L. Ed. 2d 27 at 38 (2002): "Nonnamed class members are, for instance, parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). Otherwise, all class members would be forced to intervene to preserve their claims, and one of the major goals of *class action* litigation—to simplify litigation involving a large number of class members with similar claims—would be defeated."

The distinction between the *American Pipe* line of cases and cases that discussed equitable tolling to revive stale claims is illustrated also by noting that *American Pipe* and *Crown, Cork &*

*Seal* relied on prior "representative" cases for the promulgation of the Doctrine, but did not rely on cases that considered the invocation of classical "equitable" tolling of late-filing non-class actions. For example, in *Crown, Cork & Seal*, Justice Blackmun distinguished cases that address the impact of statutes of limitations which are "intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights," such as *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428 (1965), "but these ends are met when a class action is commenced. Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims." *Crown, Cork & Seal*, 462 U.S. at 353-354.

And in a successor class action case against the United States, *Catholic Social Svcs. v. INS*, 232 F.3d 1139, 1149 (9th Cir. 2000) (en banc), the Court stated: "There is no dispute that if members of the class [in the previous class action] had filed individual actions after the dismissal of their class action, the statute of limitations would have been tolled for those individual actions. All members of the en banc panel agree on this point. The only question in this case is whether those same plaintiffs should be permitted to aggregate their individual actions into a class action. Strictly speaking, this is not a statute of limitations question at all. It is, rather, a question of whether plaintiffs whose individual actions are not barred may be permitted to use a class action to litigate those actions." *Catholic Social Svcs.* at 1147 (emphasis supplied). Notably, the court found that *American Pipe/Crown, Cork & Seal* tolling was appropriate since "[p]laintiffs are not attempting to relitigate an earlier denial of class certification, or to correct a procedural deficiency in an earlier would-be class." *Id.* at 1149.

That same "narrowing" of the putative class is presented in *Kandel*. Plaintiffs were represented by the named plaintiffs in *Archuleta* from the very beginning. They were excluded

from the resolution of the suit by terms of the Settlement Agreement, not because this Court found any legal problem with their inclusion in the class itself. The Court dismissed the *Archuleta* action with prejudice as to the named plaintiffs and the specified "settlement class" in that suit, but: (1) it did not dismiss the claims of putative class members who were not employed by any of the seventeen agencies, (2) who never received notice of the settlement, and (3) whose claims were never heard or considered in any manner as part of the *Archuleta* litigation. This Court already has held that the Government cannot be heard to claim that the Settlement Agreement, to which it agreed, barred with finality any and all future claims by persons who were not named plaintiffs and who were not former employees of the seventeen listed agencies. The finding in *Sand & Gravel*, based on *stare decisis*, that the Tucker Act's statute of limitations is "jurisdictional" certainly does not reflect a new jurisprudential concept, even though it is now definitive as to Section 2501. However, in successor class action cases where certification of the original class action was not denied but rather "narrowed", Plaintiffs are not aware of any federal court decision in which the court refused to apply the *American Pipe* Doctrine to the putative class because the particular statute of limitations in question was held to be "jurisdictional" or "absolute".

Defendant's view is that tolling of any kind now is impermissible. Plaintiffs respectfully submit that there is no reason whatsoever for the Court to reverse its earlier denial of the Motion To Dismiss on the basis of the decision in *John R. Sand & Gravel.*

## IV. <u>*AMERICAN PIPE* TOLLING IS CONSISTENT WITH THE GOALS OF RCFC 23</u>

In denying the Government's first Motion To Dismiss, this Court considered the underlying purpose of RCFC 23 to promote judicial efficiency. As pointed out in *Quinault Allottee Ass'n v. United States*, 197 Ct. Cl. at 137, under 28 U.S.C. § 2071 (1994), this Court can prescribe rules of conduct for conducting its own business. And, as noted below, the Federal Circuit explicitly has

affirmed that the Court's rules did not have to be reviewed and approved by Congress to be effective. Undeniably, *John R. Sand & Gravel* does not deal with the inherent power of the United States Court of Federal Claims to apply the *American Pipe* rule in class action cases in order to effectuate and manage its own RCFC 23. This Court has been authorized "to prescribe rules of practice and procedure for its proceedings" by 28 U.S.C. § 2503(b). In applying the *American Pipe* Doctrine, this Court not only addresses the filing date for all members of the putative class based on its application of RCFC 23, but also upon RCFC 3.

This Court has noted that the Government was made fully aware of its potential liability arising from the claims of former employees of all agencies on April 7, 1999. *American Pipe* tolling in class action cases is particularly significant in order to be "consistent with the goals of judicial efficiency promoted by class actions". RCFC 23 enables the aggregation of many small claims (some of which, depending on the dollar value, would go otherwise unresolved) into a single judicial process, thereby permitting vindication of individual rights where the Government potentially has violated congressional statutory mandates.[2] And, the Government will not be materially prejudiced by the passage of time because the proof necessary to establish the *Solow/Kandel* plaintiffs' claims is maintained in electronic databases and requires no human recollection.

This Court's decision is in harmony with the policies that the Supreme Court took into account in its landmark decision in *American Pipe*: (1) repose for prospective defendants; (2) protection for courts from the adjudication of stale claims; (3) smaller volume of litigation; (4) protection for prospective plaintiffs of a reasonable period of time in which to sue, and (5) enforcement of the substantive laws underlying plaintiffs' claims. The Supreme Court reasoned

[2] The Settlement Administrator currently has paid 35,553 eligible members of the class in the *Archuleta* case. But for the *American Pipe* tolling doctrine, the class action would have presented an incomparable administrative burden on the Court and a denial of fundamental justice to tens of thousands of class members.

that the Defendant is not prejudiced by the tolling rule in such circumstances because the filing of the initial class complaint serves to notify it of the specifics of the litigation it may have to defend against and the obligation to preserve evidence, whereas a decision not to toll the limitations period would potentially result in the filing of a multiplicity of duplicative protective actions. *American Pipe* at 554-55.

On this point, Judge Posner has cautioned (*Elmore v. Henderson*, 227 F. 3d 1009, 1010 (7th Cir. 2000):

> It is true that the statute of limitations is tolled for class members until it is determined that the case cannot proceed as a class action,… but that is because a class action is not a mere "invitation to joinder."*American Pipe & Construction Co. v. Utah, supra,* 414 U.S. at 550. It is a device centrally concerned with the economies of aggregating small claims, and it would thus be seriously injured by a rule that required all the class members to file separate, protective suits, against the eventuality that the statute of limitations would run during the period when the class status of the putative class action remained undetermined. We want the class members to rely on the filing of the class action rather than to clutter the courts with a multitude of separate suits.

In *Stone Container Corp. v. United States*, 229 F.3d 1345, 1356 (Fed. Cir. 2000), the Federal Circuit highlighted the fundamental distinction between *American Pipe* tolling and equitable tolling of non-class action cases filed outside the limitations period, stating that "*American Pipe* and *Crown, Cork & Seal* were not based on judge-made equitable tolling, but rather on the Supreme Court's interpretation of Rule 23." Citing its own ruling in *Wood-Ivey Systems Corp. v. United States*, 4 F.3d 961 (1993), the Court emphasized that the reasoning behind *American Pipe* and its progeny is that those cases were decided on the basis of the Supreme Court's interpretation of FRCP 23, and one of the principal policies guiding its creation—judicial efficiency—would be defeated if class members were instead forced to file a multiplicity of individual actions.

*Wood-Ivey Systems Corp.* illustrates the power of this Court to apply its own Rules in rejecting the Government's argument that an "absolute" limitations period barred enforcement of Claims Court Rule 6(a). A contractor brought an action in this court pursuant to the Contract Disputes Act with respect to a dispute concerning a contract for a shipboard aircraft altitude positioning system. The suit was dismissed because it was filed on the Monday following the Saturday when the twelve-month statute of limitations had run out. On appeal, the Federal Circuit Court of Appeals held that the suit was timely filed pursuant to Rule 6(a), which permitted filing on the next business day after a weekend or holiday. Without deciding whether the applicable statute of limitations was jurisdictional, the Court held that application of Claims Court rules to statutory time periods was not an enlargement of the Claims Court's jurisdiction. Inasmuch as the Federal Circuit's decision did not turn on jurisdiction, sovereign immunity, or equitable tolling, but instead on the rules, the majority specifically eschewed any reliance upon *Irwin. Id.* n.4, at 964.

The Court of Appeals reasoned that just because the Claims Court was not required by Congress to submit its rules for ratification does not mean they aren't applicable, for they were enacted with authorization from Congress; and furthermore, the Court and public have the right to rely on the rules. Justice Newman stated for the majority: "For the government now to argue that absent such ratification this Rule can not apply as written is an unwarranted disruption, after ten years of Claims Court existence, and indeed an improper intrusion into the constitutional balance." *Id.*.

The rationale of the 3rd Circuit in *Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004) is instructive as well. Faced with a class action which had been filed by shareholders who had been members of a putative subclass in an earlier action, the Court held:

> Since *American Pipe*, it has been well-settled that would-be class members are justified—even encouraged—in relying on a class

> action to represent their interests with respect to a particular claim or claims, and in refraining from the unnecessary filing of repetitious claims. *See American Pipe*, 414 U.S. at 550. The policy objectives of the class action devices—efficient deployment of court resources and the ability to consolidate claims which would otherwise be too small to warrant individual lawsuits—continue to obtain after the rejection by a court of the proposed class representatives.
>
> Drawing the line arbitrarily to allow tolling to apply to individual claims but not to class claims would deny many class plaintiffs with small, potentially meritorious claims the opportunity for redress simply because they were unlucky enough to rely upon an inappropriate lead plaintiff. For many, this would be the end result, while others would file duplicative protective actions in order to preserve their rights lest the class representative be found deficient under Rule 23. Either of these outcomes runs counter to the policy behind Rule 23 and, indeed, to the reasoning employed by the Supreme Court in *American Pipe* and *Crown, Cork & Seal.*

*Id.* at 111.

What is particularly significant about this decision is that then-Circuit Judge Alito concurred in the result with respect to permitting tolling where denial of the prior class certification was not based on deficiencies of the class itself. Judge Alito wrote: "I join the opinion of the Court insofar as it holds that a prior action in which class certification is denied based solely on deficiencies of the class representative tolls the statute of limitations for filing a later, substantively identical action with a new representative." *Id.* at 112.

If Defendant prevails in its interpretation of the Supreme Court's narrow holding in *John R. Sand & Gravel* that "this Court has no authority to consider tolling" of any kind including the *American Pipe* Doctrine, it would open the door wide to the interpretation that Section 2501 requires all unnamed members of *every* class action, not just successor class actions, to file their own claim within the six-year limitations period. The implication of such a holding that *John R. Sand & Gravel* trumps the *American Pipe* Doctrine of tolling is far reaching. It would have the effect of converting Rule 23 to an invitation to "joinder" despite the oft-cited rejection of such a

concept. Inasmuch as RCFC 20(a) does not permit joinder of "similar" rather than "same" transactions (*Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 336-7 (2004)), such a holding would necessitate that each class member in disputes with respect to the proper computation of pay would have to file an individual action within the original limitations period, albeit that the Government's violation is governed by a misinterpretation of a pay statute that results in an underpayment that may affect hundreds of thousands of employees. Such a ruling would negate the conclusion of this Court, and every other court that has ever managed a class action, that all putative members of the designated class are deemed to have filed when the named plaintiff-representatives of the class initially brought the action. In considering whether to certify a particular class, this Court has recognized that "an expiring statute of limitations is a 'legitimate concern' when deciding whether or not to certify a class, and one that weighs in plaintiff's favor". *Berkley v. United States*, 45 Fed. Cl. 224, 234 (1999) (citing *Moore v. United States*, 41 Fed. Cl. 394, 400 (1998) and *Armitage v. United States*, 18 Cl. Ct. 310, 315 (1989)); *Robert F. Christian II v. United States*, 46 Fed. Cl. 793, 816 (2000); *Christensen v. United States*, 49 Fed. Cl. 165, 167-168 (2001). Thus, the Court explicitly has given recognition to the unquestionable principle that the statute is satisfied by the original filing date of the class action Complaint, although individual claims could be filed, and often are, after that date as long as they complied with the date certain fixed for filing individual claims as published in the notice of certification.

It cannot conceivably be said that *John R. Sand & Gravel*, without a word of discussion of the *American Pipe* Doctrine, stands for a radical departure from that long-standing jurisprudence of class actions in this or any other court .

Plaintiffs, and the putative class they represent, have played by the rules established by the Supreme Court, and most certainly have not slept on their rights. Plaintiffs contend that tolling of

28 U.S.C. §2501 in the case at bar from April 7, 1999 until the approval of the Settlement Agreement in the *Archuleta* action on June 1, 2006 is appropriate under the tolling rule promulgated by the Supreme Court in *American Pipe*, and as a rule of interpretation of RCFC 23 and RCFC 3. On the other hand, Defendant has not demonstrated that *John R. Sand & Gravel* compels a radically different, and potentially disastrous, result to judicial efficiency and to the preservation of effective judicial remedies in a variety of class actions, including takings and proper pay enforcement cases.

WHEREFORE, plaintiffs respectfully submit that Defendant's Motion to Dismiss should be denied.

/S/_IRA M.LECHNER_____

IRA M. LECHNER
Attorney for Plaintiffs
19811-4th Place
Escondido, CA 92029
Phone: 858-864-2258
Fax; 760-839-5755

Dated: March 17, 2008

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 17th day of March, 2008, a copy of the foregoing "PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS", was filed electronically in the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

**S/IRA M. LECHNER**
Ira M. Lechner