# In the United States Court of Federal Claims

No. 06-872

(E-Filed: April 30, 2014)

| | |
|---|---|
| GERALD K. KANDEL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | Partial Summary Judgment; RCFC 56; Class Action; Federal Employees; Accrued and Accumulated Annual Leave; 5 U.S.C. §§ 6303, 6304; Separation; Lump-Sum Payment Statute; 5 U.S.C. §§ 5551, 5552, 5553; Cost-of-Living Adjustment (COLA); Locality Pay Adjustment; Sunday Pay; Post Allowance; Back Pay Act; 5 U.S.C. § 5596; Prejudgment Interest |

Ira M. Lechner, Washington, DC, for plaintiffs.

Mikki Cottet, Senior Trial Counsel, with whom were Stuart F. Delery, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

    This class action concerns the government's alleged miscalculation of lump sums for annual leave under the Lump-Sum Payment statute, 5 U.S.C. § 5551 et seq., which were paid out to the employees of numerous federal agencies upon the employees' retirement, death or separation from federal service. See, e.g., Compl., Dec. 22, 2006, ECF No. 1, at ¶ 10. The parties bring cross-motions for partial summary judgment, debating the availability of prejudgment interest for the entire class under the Back Pay Act, 5 U.S.C. § 5596; plaintiffs also move, on behalf of four specific individuals, for summary judgment on liability, damages and interest under the Back Pay Act. See Def.'s [ ] Cross-Mot. Partial Summ. J. (Def.'s Cross-Mot.), ECF. No. 98, stayed by Order, ECF No. 114, reinstated by Order, ECF No. 140; Pls.' Cross-Mot. Partial Summ. J. (Pls.' Cross-Mot.), ECF No. 141; Pls.' Mem. [] In Support of Pls.' Cross-Mot. (Pls.' Mem.), ECF No. 141-1; see also Pls.' Prop. Findings of Fact (PFOF), ECF No. 142; Pls.' Opp'n to Def.'s Cross-Mot. (Pls.' Opp'n), ECF No. 143; Def.'s Reply, ECF No. 149; Def.'s

Resp. to PFOF, ECF No. 150; Pls.' Reply, ECF No. 151; Pls.' Mot. re: Add. Auth., ECF No. 161; Def.'s Resp. re: Add. Auth., ECF No. 163.

For the reasons that follow, the court **DENIES** summary judgment to the four individual plaintiffs seeking to establish liability and damages under the Back Pay Act, 5 U.S.C. § 5596. Further, the court **STAYS** the balance of the cross-motions, brought on behalf of the class as a whole, with respect to whether a violation of the Lump-Sum Payment statute, 5 U.S.C. §§ 5551–5552, also constitutes an independent violation of the Back Pay Act, 5 U.S.C. § 5596, that triggers an additional award of prejudgment interest.

I.   BACKGROUND

Originally styled Solow v. United States, this suit was filed on December 22, 2006 and then renamed and amended to include thirty-eight additional plaintiffs formerly employed at a variety of federal agencies. See Compl. 1, modified by Order, Oct. 25, 2007, ECF No. 31 (withdrawing Jean-Marie Solow as lead plaintiff, and replacing her with Gerald K. Kandel), amended by Order, March 5, 2008, ECF No. 39 (adding the thirty-six additional potential class representatives). The suit was initiated after a predecessor class action, Archuleta v. United States, Case No. 99-205 C, settled similar claims of employees of seventeen specific agencies not included in this action. See Athey v. United States, 78 Fed. Cl. 157, 159 (2007) (Athey I) (discussing Archuleta). Employees of the Department of Veterans Affairs, who were part of Archuleta but did not settle, were severed from that suit and now have continuing litigation before this court in a separate matter. Id.; see, generally, Athey v. United States, Case No. 99-2051C.

On March 21, 2007, the government filed a motion to dismiss this suit, challenging subject matter jurisdiction under Rule 12(b)(1) on the grounds that plaintiffs' claims were barred by res judicata, statute of limitations, and laches. ECF No. 9. The court denied the motion. Solow v. United States, 78 Fed. Cl. 86 (2007) (Smith, J.) (Solow), recons. granted, Kandel v. United States, 85 Fed. Cl. 437 (2009) (Smith, J.) (Kandel I), recons. denied, Order, May 29, 2000, ECF No. 54 (Smith, J.) (Kandel II). Res judicata and laches were no bar, Solow, 78 Fed. Cl. at 87–90, and statutory tolling preserved the limitations period, Kandel I, 85 Fed. Cl. at 439–40.

On June 21, 2010, Judge Smith granted the plaintiffs' motion to certify a class action. Order, ECF No. 76. Almost two years later (after numerous party-driven stays and extensions), Judge Smith certified the class, approved class notices, and appointed class counsel and the class administrator.[1] See Order, Apr. 19, 2012, ECF No. 123

---

[1] In the interim, three named plaintiffs—Kent Fixman, Kennard Thompson, and Mark Heatwole—were dropped from the suit by joint consent of the parties based on evidence that they had received appropriate lump-sum payouts. Order, Dec. 2, 2011, ECF No. 113.

2

(Certification Order). The court defined the "Kandel Class" to include "[a]ll civilian employees who retired, died, or separated under conditions enumerated in 5 U.S.C. [§] 5551" (collectively, separated) from "all" federal entities other than the eighty federal entities expressly enumerated and excluded by the Certification Order. Id. at 2 (defining class and excluding twenty entities); id. at Ex. A (excluding an additional sixty entities). The Kandel Class is further limited to those who separated on or after October 14, 1993 through September 6, 1999. See id. at 2. Members of the Kandel Class were entitled to receive lump sums for accrued and accumulated annual leave upon their separation, which plaintiffs allege were miscalculated and must be corrected. See id. at 2–3; see also discussion infra Part III (Facts) (providing further detail).

Notice to potential class members awaits publication. Discovery disputes have intervened to slow the process; the most recent was resolved last month. See Order, March 14, 2014, ECF No. 160. The court also recently denied plaintiffs' request to amend the notice to reflect the purported availability of prejudgment interest under the Back Pay Act, 5 U.S.C. § 5596. Op. & Order, April 30, 2014, ECF No. 165.

The court now considers the plaintiffs' request for summary judgment on behalf of four[2] named plaintiffs—(i) Stanley A. Zuckerman; (ii) Gerald K. Kandel; (iii) Alan J. Novack; and (iv) Ronald M. Martinez—as to the government's liability, under the Back Pay Act, 5 U.S.C. § 5596, for allegedly unpaid supplemental lump sums and prejudgment interest. With respect to the balance of the parties' cross-motions, which concern the availability of prejudgment interest for the class as a whole, the court stays the motions pending further briefing.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine dispute is one that "may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A fact is "material" if it "might affect the outcome of the suit." Id. at 248. However, a "non-movant is required to provide opposing evidence . . . only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006). "[I]nferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, 369 U.S. 654, 655 (1962);

---

[2]   Plaintiffs' motion was brought on behalf of five individuals, see Pls.' Cross-Mot. Partial Summ. J. (Pls.' Cross-Mot.), ECF No. 141, at 1–2, but plaintiffs later withdrew the motion with respect to one individual, Mr. Ralph E. Hanson, see Pls.' Reply, ECF No. 151, at 10 n.4.

DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984). However, "the [c]ourt may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter." Mansfield v. United States, 71 Fed. Cir. 687, 693 (2006). "Further, summary judgment is inappropriate if the factual record is insufficient to allow the [c]ourt to determine the salient legal issues." Id.

III.    FACTS

A federal civilian employee, whose employment is governed by title 5 of the United States Code, is entitled, as a matter of law, to receive a lump-sum payment for his or her accumulated and accrued annual leave upon separation from federal service. 5 U.S.C. §§ 5551–5552[3] (Lump-Sum Payment statute); Kandel I, 85 Fed. Cl. at 438 (citing same); cf. 5 U.S.C. § 6304 (capping leave accumulation). The statute further provides that the lump-sum payment should be "equal [to] the pay . . . the employee or individual would have received had he [or she] remained in the service until [the leave] expir[ed]." 5 U.S.C. § 5551(a). Accordingly, if the employee's pay rate was subject to an increase that became effective during his or her unexpired leave, then his or her lump sum should reflect that increase from its effective date through expiration of the leave. 5 U.S.C. § 5551(a); Compl. ¶ 21; Def.'s Cross-Mot. 1–2. Examples of pay adjustments that might take effect after an employee's separation include cost-of-living adjustments (COLA) and locality pay increases. See 5 U.S.C. § 5303 (COLA); 5 U.S.C. § 5304 (locality pay); see also Compl. ¶ 3 (seeking to recover COLA and locality pay adjustments).

In addition, an employee's lump sum should reflect non-overtime Sunday premium pay if the employee regularly received such pay prior to separation. 5 U.S.C. § 5546(a); see also Compl. ¶ 2 (claiming entitlement to "regularly scheduled non-overtime Sunday premium pay" under 5 U.S.C. § 5546(a) for a period of time narrower than the Class Period, from October 14, 1993 through September 30, 1997). The lump sum should also reflect a foreign post allowance subject to conditions enumerated in the statute. 5 U.S.C. § 5924(1); see also Compl. ¶ 2 (claiming entitlement to foreign "post allowance under 5 U.S.C. § 5924(1) as authorized by the United States Department of State's Standardized Regulations (Government Civilians, Foreign Areas) if the employee's official duty station was in the foreign area when he or she became eligible for a lump-sum payment").

Each member of the Kandel Class received a lump-sum payment for accrued and accumulated leave upon his or her separation from service. Certification Order 2; Compl. ¶ 22; Def.'s Resp. to PFOF ¶ 3. The payment was calculated by multiplying each

---

[3]    Unless otherwise noted, statutory provisions cited herein were in effect during the entirety of the Kandel Class Period (October 14, 1993 through September 17, 1999).

4

individual's basic rate of pay at separation by his or her unused leave. Compl. ¶ 22; Def.'s Cross-Mot. 2. To fall properly within the class, however, each individual must have had enough unused leave that it projected beyond one or more applicable pay adjustments that became effective before the individual's leave expired. Certification Order 2. As such, he or she would have been entitled to a "supplemental lump sum" reflecting the applicable pay adjustment from its effective date through the expiration of the individual's leave. Id. Members properly within the class never received that supplemental payment. Id. As a result, total amounts received did not accurately reflect "across-the-board annual adjustment[s] and locality pay adjustment[s] or general system-wide pay increase[s]," id.—for our purpose, COLA and locality pay adjustments—that would have become effective before the expiration of the employees' unused leave periods. See id.; Compl. ¶¶ 2, 3, 19–27. In addition, where applicable, employee lump sums failed to reflect Sunday premium pay and/or a foreign post allowance, subject to conditions set forth in the Certification Order. Certification Order 3.

Defendant disputes whether every putative class member was entitled, in fact, to a supplemental lump sum or, if entitled, whether those supplemental lump sums were issued or remain unpaid. Def.'s Cross-Mot. 7–8. Plaintiffs claim that every member of the putative class was entitled to a supplemental lump sum, but did not receive it. Compl. ¶¶ 3, 23, 27; Pls.' Mem. 11–12. If plaintiffs are correct, then each of these individuals would be entitled, under the Lump-Sum Payment statute, to the difference between what they received and what they claim they should have received had their lump-sum payments been properly calculated. Compl. ¶ 28 & p. 13 ("Wherefore" clause ¶ (b)).

In the plaintiffs' motion presently before the court, four named plaintiffs— (i) Stanley A. Zuckerman; (ii) Gerald K. Kandel; (iii) Alan J. Novack; and (iv) Ronald M. Martinez—seek summary judgment on their individual claims for liability, damages, and prejudgment interest. As an initial matter, the court notes that the individuals cast their requests for relief exclusively in terms of the Back Pay Act, with no mention of the Lump-Sum Payment statute. See Pls.' Cross-Mot. 1–2. But, any violation of the former would require, on these facts, an underlying violation of the latter.[4] See Pls.' Mem. 1 (arguing that the "unjustified and unwarranted personnel actions" required for Back Pay Act relief, 5 U.S.C. § 5596, is the government's alleged "wrongful computation and

---

[4] See also Athey v. United States, 108 Fed. Cl. 617, 618–19, 622 (2013) (Smith, J.) (Athey II) (finding the court had jurisdiction to hear plaintiffs' lump-sum payment claims under the Back Pay Act, 5 U.S.C. § 5596, only because the claims were pled in conjunction with the money-mandating Lump-Sum Payment statute, 5 U.S.C. §§ 5551–5552, and the Tucker Act, 28 U.S.C. § 1491); United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983) ("The Back Pay Act is merely derivative in application; it is not itself a jurisdictional statute.").

5

payment of lump-sum[s] . . . for unused annual leave" under the Lump-Sum Payment statute, 5 U.S.C. § 5551(a)).

Mr. Zuckerman seeks $2,855.89, plus prejudgment interest from the date of his retirement, September 29, 1994, until paid. Pls.' Cross-Mot. ¶ 2. Mr. Kandel seeks $657.40, plus prejudgment interest from the date of his retirement, October 31, 1998, until paid. Id. at ¶ 3. Mr. Novack seeks $199.52, plus prejudgment interest from the date of his retirement, December 20, 1997, until paid. Id. at ¶ 4. Mr. Martinez seeks $107.65, plus prejudgment interest from the date of his retirement, November 15, 1996, until paid. Id. at ¶ 5.

IV. DISCUSSION

It is unclear why plaintiffs limit their motion for partial summary judgment to only four named plaintiffs. The court is wary of plaintiffs' use of this approach to the litigation because it runs contrary to the central purposes of class action litigation. "Rule 23 class actions were designed to unify and render manageable litigation involving numerous members of a homogenous class who would otherwise each have access to the courts through individual lawsuits." Gottlieb v. Wiles, 11 F.3d 1004, 1009 (10th Cir. 1993) (discussing class action litigation under similar Fed. R. Civ. P. 23), abrogated on other grounds by Devlin v. Scardelletti, 536 U.S. 1, 14 (2002) (holding that a nonnamed class member who timely objected to settlement at trial level had the power to bring an appeal without first intervening). "The obvious advantage of the representative suit [is] that it [is] far cheaper and more convenient to maintain a single proceeding . . . than to adjudicate the controversy in piecemeal fashion by multiple actions." 7A Charles Alan Wright et al., Federal Practice and Procedure § 1751 (3d ed.); see also Ann K. Wooster, Annotation, Propriety of Incentive Awards or Incentive Agreements in Class Actions, 60 A.L.R. Fed. 6th 295, § 2 (2010) ("Class actions are useful procedures for achieving economies of scale in litigation.") (citation omitted); Def.'s Reply 3 n.2 (arguing a piecemeal approach to litigation, "[w]hether by design or by accident," generally "leads to burdensome filings with the [c]ourt"). Piecemeal adjudication may not technically violate any rule of the court but, depending on the circumstances, may not be in keeping with either Rule 1 or Rule 23(c)(5). See RCFC 1 (directing that rules be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"); RCFC 23(c)(5) (contemplating dividing a class into subclasses if appropriate, but not contemplating adjudication of individual claims).

The court also agrees with defendant that "piecemeal litigation . . . is generally disfavored . . . , and should be disfavored by the [c]ourt here, particularly[] when the issues presented by the [four] plaintiffs identified . . . will be dispositive issues of law which will affect [multiple other named plaintiffs] and all of those who [later opt-in to] the class." Def.s' Reply 3 n.2 (citation omitted). Fragmented litigation is especially disfavored when (as here) the four individuals moving for relief were seemingly selected at random; plaintiffs have given no indication or offered any argument that these

6

individuals are test plaintiffs for each of their discrete characteristics or, alternatively, that these individuals are sufficiently similar to qualify as members of a finite subclass. Cf. Op. & Order, Athey v. United States, Case No. 99-2051 (Fed. Cl. April 28, 2014) (Athey III) (granting partial summary judgment to a subset of the plaintiffs' class comprised of all General Schedule employees of the VA who separated within a prescribed seventeen year period).

If not identified at random, plaintiffs may have selected the four movants for the seeming simplicity of their individual claims. Resolving straightforward claims early in litigation might help streamline subsequent litigation for putative plaintiffs whose claims are either similar or less straightforward. But, the court risks drawing conclusions based, inadvertently, on patently simple facts that obscure latent issues. In the latter case, the court's conclusions may prove unsound when applied to the class as a whole. It may also lead to difficulties in determining the effects of collateral estoppel or res judicata. See Baylor v. U.S. Dep't of Hous. and Urban Dev., 913 F.2d 223, 225 (5th Cir. 1990) ("[T]he purpose of class action suits[,]" under similarly-worded Federal Rule of Civil Procedure 23, includes "avoid[ing] (i) a multiplicity of suits on common claims resulting in inconsistent adjudications and (ii) the difficulties in determining the res judicata effects of a judgment.'") (quoting Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1206–07 (5th Cir. 1981)). In this case, the Kandel Class is potentially comprised of thousands of individuals, from a myriad of different agencies, who separated over a six-year period; at this early stage of litigation, it is especially difficult to determine the extent of any deviations among the putative class members' claims.

Against this backdrop, the court now turns to consider whether each of the individuals has established, under Rule 56(a), a lack of "genuine dispute as to any material fact" regarding "entitle[ment] to judgment as a matter of law" in an ascertainable amount of damages for a violation of the Lump-Sum Payment statute, 5 U.S.C. § 5551. As the court already has explained, see supra Part III, a violation of this statute is a prerequisite to any purported independent violation of the Back Pay Act on the same facts.

A.   Evidentiary Support, Generally

Unless otherwise noted, the four moving parties offer competent evidence to support their requests for summary judgment. "Although evidence presented by a non-movant in relation to a summary judgment motion need not be admissible at trial, Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548, the [c]ourt may not grant summary judgment to a moving party based solely on evidence that arguably may not be adduced and admitted at trial." Bannum v. United States, 59 Fed. Cl. 241, 244 (2003) (emphasis omitted) (citing Conoco, Inc. v. Dep't, 99 F.3d 387, 393–95 (Fed. Cir. 1996), which vacated a grant of summary judgment based on inadmissible evidence); see also Hallwood Plaza, Inc. v. United States, 84 Fed. Cl. 804, 810 (2008) ("Evidence in support of a motion for summary judgment must be of the sort admissible at trial.").

7

Declarations are one form of competent evidence, RCFC 56(c)(4), and, as set out below, each of the declarations offered in this case "is made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the . . . declarant is competent to testify on the matters stated." RCFC 56(c)(4). The court also finds that the government personnel and payroll records, as well as the email exchanges between government personnel and the moving parties, are competent to support these plaintiffs' claims on summary judgment insofar as the materials are properly authenticated through the declarations. See id.

With regard to those government records, email exchanges and other materials that have not been authenticated, or for which a foundation has not been laid, the court nevertheless finds that the facts therein are "undisputed for purposes of the motion" under Rule 56(e)(2). Such a finding is appropriate where (as here) the court has no doubt plaintiffs will be able to offer the facts in a form of admissible evidence at trial, and defendant will have no basis for objection.

In addition to relying on Rule 56(e)(2), the court also is willing to consider the unauthenticated personnel and payroll records under the residual hearsay exception, Fed. R. Evid. 807, although its willingness to do so is limited to the facts of this case and for summary judgment only. There is little to no question that the facts contained in these specific materials will ultimately be admissible, at trial, under one or more evidentiary rules. See, e.g., Fed. R. Evid. 803(6) (business records exception), 801(d)(2) (statements by a party-opponent). Defendant also raises no objection to their relevance, authenticity, or trustworthiness; rather, defendant routinely refers to these materials as the "best evidence" of their content and offers no contrary or conflicting evidence. See Def.'s Resp. to PFOF ¶¶ 2–5; cf. Conoco, 99 F.3d at 390, 391–95 (vacating grant of summary judgment as it was based, in part, on inadmissible evidence). Similarly, the court will consider the excerpted government salary tables and the charts summarizing COLA effective dates under the residual hearsay exception because these materials also are trustworthy and were shared with defendant even though plaintiffs may fail to present them in their ideal forms. See Fed. R. Evid. 807 (residual hearsay exception), 803(8) (public records), 1005 (copies of public records), 1006 (summaries to prove content).[5]

    B.    Individual Claims

        1.    Stanley A. Zuckerman

Plaintiff Stanley A. Zuckerman adequately sets forth that he was employed as a Foreign Service Officer with the United States Information Agency (USIA), in the

---

[5] In Part IV(B), infra, the court will cite to materials supported by a declaration using the following format: Name Decl., Ex. #. If materials are not supported by a declaration, the court will refer to them with the citation: Pls.' Ex. #.

District of Columbia.  See Compl. Ex. 1 ¶ 5.  He retired on September 29, 1994. Zuckerman Decl., May 11, 2007, ECF No. 142-2.  Upon separation, his salary rate per hour was $57.78, and he had an annual leave balance of 2,103 hours.  Pls.' Ex. 2b (Record of Leave Data, Nov. 7, 1994), ECF No. 142-2, at §§ 13, 14.  Accordingly, it appears he was paid a lump sum upon retirement for 2,103 hours at a rate of $57.78 per hour, for a total of $121,511.34 (gross).  Pls.' Ex. 2a (Email from J. Kohler, State Dep't, Oct. 25, 2006), ECF No. 142-2.  A few months after he retired, the next COLA and locality pay adjustment applicable to federal employees in the District of Columbia was 3.22% effective January 8, 1995.  PFOF ¶ 2; Pls.' Ex. 2c (Salary Table 1995-DCB), ECF No. 142-2.; Pls.' Ex. 2d (COLA effective dates).

If plaintiffs are correct that Mr. Zuckerman is entitled to be paid for all 2,103 hours in his account, then the court was able to verify—with a calculator and independent reference to 1994–1995 calendars outside the record—plaintiffs' contention that Mr. Zuckerman had 1,535 unexpired hours when the adjustment took effect on January 8, 1995.  See PFOF ¶ 2 (alleging same).  This would entitle him to a supplemental lump-sum payment of $2,855.89, plus or minus $2 to account for potential rounding and de minimus differences in the approach to calculation.  See PFOF ¶ 2; Pls.' Cross-Mot. ¶ 2. The amount represents the difference between the new, higher hourly rate and the old rate as applied to the 1,535 unexpired leave hours.  Id.

The court finds, however, that plaintiffs' facts are insufficient to draw these conclusions.  First, plaintiffs fail to address whether any of the statutory caps on leave accumulation set out in 5 U.S.C. § 6304 affect the calculation of plaintiffs' lump sum. See Mansfield, 71 Fed. Cl. at 693 ("[S]ummary judgment is inappropriate if the factual record is insufficient to allow the [c]ourt to determine the salient legal issues.").  Second, even if Mr. Zuckerman were entitled to a supplemental lump sum, his declaration fails to address whether he ever received a supplemental lump-sum payment and, on summary judgment, the court must construe this ambiguity in defendant's favor.  See Diebold, 369 U.S. at 655 ("[I]nferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.").

    2.    Gerald K. Kandel

Plaintiff Gerald K. Kandel adequately sets forth that he was employed as a Foreign Service Officer with the USIA in the District of Columbia, but he retired on October 31, 1998.  Kandel Decl., July 24, 2013, ECF No. 142-3, at ¶¶ 1, 2; Kandel Decl. Ex. 3a (Notification of Personnel Action) at §§ 4, 7.  When he retired, his annual salary was $98,552.00 (gross) at an hourly rate of pay of $47.22, and he had an unused leave balance of 740 hours.  Kandel Decl. ¶ 3; Kandel Decl. Ex. 3a (Notification of Personnel Action) at § 12; Kandel Decl. Ex. 3b (Domestic Payroll Office Email Exchange) at 1.  In December, 1998, he was paid a lump sum of $34,942.80 (gross).  Kandel Decl. ¶ 4; Kandel Decl. Ex. 3b (Domestic Payroll Office Email Exchange) at 2.  According to Mr. Kandel, he never received a supplemental lump-sum payment.  Kandel Decl. ¶ 6; Kandel

9

Decl. Ex. 3b (Domestic Payroll Office Email Exchange) at 1.  Two months after Mr. Kandel's separation, the next COLA and locality pay adjustment applicable to federal employees in the District of Columbia, was 3.68% and became effective January 3, 1999.  Pls.' Ex. 3c (Salary Table 1999-DCB), ECF No. 142-3.

If plaintiffs are correct that Mr. Kandel is entitled to be paid for all 740 hours in his account, then the court was able to verify—with a calculator and independent reference to 1998–1999 calendars outside the record—plaintiffs' contention that Mr. Kandel had 380 unexpired hours when the adjustment took effect on January 3, 1999.  See PFOF ¶ 3.  This would entitle him to a supplemental lump-sum payment of $660.32, plus or minus $2 to account for potential rounding and de minimus differences in the approach to calculation.  See  PFOF ¶ 3 (asserting Mr. Kandel is entitled to $657.49, but this figure is based on rounding down the new rate); Pls.' Cross-Mot. ¶ 3 (same).

However, the court again finds that plaintiffs' facts are insufficient to draw these conclusions.  Unlike Mr. Zuckerman, Mr. Kandel offers sufficient evidence that he never received a supplemental lump sum.  See Kandel Decl. ¶ 6; Kandel Decl. Ex. 3b (Domestic Payroll Office Email Exchange) at 1.  However, the court is still left with its concern that a statutory cap on leave accumulation under 5 U.S.C. § 6304 may affect the calculation of the plaintiffs' lump sums.  See Mansfield, 71 Fed. Cl. at 693.

        3.     Alan J. Novack

Plaintiff Alan J. Novack adequately sets forth that he was employed as a Loan Sales Specialist with the Federal Deposit Insurance Corporation in Franklin, Massachusetts, when he retired on December 20, 1997.  Novack Decl., ECF No. 142-4, at ¶ 2; Novack Decl. Ex. 4a (Notification of Personnel Action) at §§ 7, 14, 39.  When he retired, his hourly rate of pay was $28.10 amounting to a total salary of $58,640.00 (gross), and he had an unused annual leave balance of 324 hours.  Novack Decl. ¶ 3; Novack Decl. Ex. 4a (Notification of Personnel Action) at § 12; Novack Decl. Ex. 4b (Record of Leave Data) at §§ 13, 14.  He received a lump sum of $9,104.40 (gross) that was paid in January 1998.  Novack Decl. ¶ 4, 5; Novack Decl. Ex. 4c (Statement of Earnings & Leave).  According to Mr. Novack, he never received a supplemental lump sum.  Novack Decl. ¶ 6.  Shortly after Mr. Novack's separation, the next COLA and locality pay adjustment applicable to federal employees in Boston, Massachusetts, equal to 2.91%, became effective on January 4, 1998.  Pls.' Ex. 4d (Salary Table 1998-BOS), ECF No. 142-4.

If plaintiffs are correct that Mr. Novack is entitled to be paid for all 324 hours in his account, then the court was able to verify—with a calculator and independent reference to 1997–1998 calendars outside the record—plaintiffs' contention that Mr. Novack had 244 unexpired hours when the adjustment took effect on January 3, 1999.  See PFOF ¶ 4.  This would entitle him to an unpaid supplemental lump-sum payment of $199.52, plus or minus $2 to account for potential rounding and de minimus differences

in the approach to calculation.  See PFOF ¶ 4; Pls.' Cross-Mot. ¶ 4.  While he has offered evidence he never received a supplemental payment, Novack Decl. ¶ 6, the court cannot draw conclusions, at this time, regarding liability because the parties fail to engage in any discussion or argument regarding application of the leave cap at 5 U.S.C. § 6304.  See Mansfield, 71 Fed. Cl. at 693.

       4.      Ronald M. Martinez

Lastly, plaintiff Ronald M. Martinez adequately sets forth that he was employed with the Corporation for National and Community Service as a Budget Analyst, in Denver, Colorado, when he retired on November 15, 1996.  Compl. Ex. 1 ¶ 6; Decl. of Ronald M. Martinez (Martinez Decl.), May 11, 2007, ECF No. 142-5.  He retired with 468 hours of unused annual leave and was paid $8,962.20 (gross) as a lump sum, Statement of Earnings & Leave, Pay Period Ending Dec. 7, 1996, ECF No. 142-5, from which the court can infer his hourly rate of $19.15, see id.  Less than two months after his separation, a COLA and locality pay adjustment applicable to federal employees in Denver, Colorado, equal to 2.99%, took effect on January 5, 1997.  Pls.' Ex. 5b (Salary Table No. 97-DEN), ECF No. 142-5; Pls.' Ex. 5c (COLA effective date), ECF No. 142-5.

If plaintiffs are correct that Mr. Martinez is entitled to be paid for all 468 hours in his account, then the court was able to verify—with a calculator and independent reference to 1996–1997 calendars outside the record—plaintiffs' contention that Mr. Martinez still had 188 unexpired hours when the adjustment took effect on January 5, 1997.  See PFOF ¶ 5 (misstating January 7, 1997); see Pls.' Ex. 5c (COLA effective date was January 5, 1997).  This would entitle him to an unpaid supplemental lump-sum payment of $107.65, plus or minus $2 to account for potential rounding and de minimus difference in the approach to calculation.  See PFOF ¶ 5; Pls.' Cross-Mot. ¶ 5.

Mr. Martinez's claim fails like the other plaintiffs' claims.  There is no evidence in the record as to whether Mr. Martinez ever received a supplemental lump sum; accordingly, we must assume he did not for purposes of summary judgment.  See Diebold, 369 U.S. at 655.  Plaintiffs also fail to address the statutory leave cap here as well.  See Mansfield, 71 Fed. Cl. at 693.

    C.    Defendant's Response

Having determined that plaintiffs failed to meet their initial burden, the court need not consider the merits of defendant's response to plaintiffs' proffered evidence and argument.  Saab Cars USA, Inc., 434 F.3d at 1369 (2006) ("[A] non-movant is required to provide opposing evidence . . . only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law.").  The court notes, however, that defendant did not adduce a single fact to challenge summary judgment concerning an underlying violation of the Lump-Sum Payment statute (5 U.S.C. §§ 5551–5552).  Accordingly, but for the technical frailties in plaintiffs' motion, the court might have

entered summary judgment (at least for a violation of the Lump-Sum Payment statute) in plaintiffs' favor.  Defendant explained in its reply that it "[did] not address the exact monetary amounts to which the plaintiffs claim the five individuals . . . are entitled" based on its belief that "none of the plaintiffs [fell] within the scope of the Back Pay Act."  Def.'s Reply 4 n.3.  This was a risky approach, as it is generally incumbent on the non-movant to adduce more than mere denials or conclusory statements once a moving party satisfies its initial burden.  See Celotex Corp., 477 U.S. at 324; Liberty Lobby, 477 U.S. at 249–50; Barmag, 731 F.2d at 835–36.  In fact, defendant seemingly admits plaintiffs' averments insofar as they are "supported by the documents cited, which are the best evidence of their content."  See Def.'s Resp. PFOF ¶¶ 2–5.  In this instance, the court happened to have engaged in an independent assessment of the plaintiffs' materials, but no party should assume this will be so in the future.

## V.     CONCLUSION

The parties' cross-motions for partial summary judgment are **DENIED-IN-PART** and **STAYED-IN-PART**.  The court **DENIES** partial summary judgment to the four named plaintiffs, regarding government liability under the Lump-Sum Payment Statute, 5 U.S.C. § 5551–5552, which is required before the court can find a violation of the Back Pay Act, 5 U.S.C. § 5596, for unpaid supplemental lump sums and prejudgment interest.  The court further **STAYS** the parties' cross-motions, brought on behalf of the entire Kandel Class, as to whether a violation of the Lump-Sum Payment statute, 5 U.S.C. §§ 5551–5552, may constitute an independent violation of the Back Pay Act, 5 U.S.C. § 5596, in order to trigger an award of prejudgment interest.  The court has taken the issue under advisement pending supplemental briefing, which the court will solicit by separate court order.

IT IS SO ORDERED.

 s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Chief Judge