# In the United States Court of Federal Claims

No. 06-872

Filed: June 12, 2024

---

**GERALD K. KANDEL, et al.,**

    *Plaintiffs*,

v.

**THE UNITED STATES,**

    *Defendant*.

---

*Ira M. Lechner*, Washington, D.C., for Plaintiffs.

*Mikki Cottet*, Senior Trial Counsel, *Reginald T. Blades, Jr.*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, United States Department of Justice, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**[1]

    It is the ricochet of success that occasionally determines the result of a dispute. After reaching a final settlement in this underlying action, Plaintiffs now move for the award of attorney fees and expenses under the Equal Access to Justice Act ("EAJA"). While the Court acknowledges Plaintiffs' efforts in securing that settlement and throughout litigation, the Court ultimately finds the United States' position was substantially justified. Consequently, EAJA fees are precluded and Plaintiffs' Motion for Attorney Fees, (ECF No. 461), is denied.[2]

---

[1] This matter was initially assigned to Judge George Miller, (ECF No. 2), and then reassigned several times—first to Judge Loren A. Smith in 2007, (ECF No. 7), Judge Mary Ellen Coster Williams in 2013, (ECF No. 134), Judge Patricia Elaine Campbell-Smith in 2013, (ECF No. 153), Judge Elaine Kaplan in 2013, (ECF No. 154), back to Judge Patricia Elaine Campbell-Smith in 2014, (ECF No. 157), and, finally, to the undersigned in 2024, (ECF No. 475).

[2] This litigation was the subject of a separate opinion denying fees under EAJA § 2412(b). *See Kandel v. United States*, 160 Fed. Cl. 255 (2022).

### I.   Background[3]

The federal government currently employs more than two million civilians in its executive branch across 438 agencies, though these numbers vary annually.[4] Plaintiffs are a group of former federal employees from thirty-one different agencies who argued that their lump sum payments for unused annual leave were miscalculated. (*See generally* Am. Compl, ECF No. 401; *see also* ECF No. 172 at 2 (specifically identifying the agencies encompassed by this action)).[5] The present case is related to class actions filed by other former federal employees alleging that several federal agencies underpaid them for unused leave—typically distributed as a lump sum at the end of employment—by failing to include cost-of-living adjustments and locality pay increases (collectively referred to as "the adjustments"). *See Archuleta v. United States*, Case No. 99-205C; *Athey v. United States*, Case No. 99-2051C, Am. Compl., ECF No. 2 (alleging, among other things, that employees who separated from the Department of Veterans Administration from 1993 to 1999, with unused annual leave were not paid the increase in pay and allowances that came into effect post-separation).[6] The resolutions of *Archuleta* and *Athey* are pertinent here.

Five months after *Archuleta* commenced nearly twenty-five years ago, the Office of Personnel Management ("OPM") issued regulations clarifying that the adjustments *should* be included in employee's separation pay and made those corrections to the compensation of separating employees. *Athey v. United States*, No. 2020-2291, 2021 WL 4282593, *1 (Fed. Cir. Sept. 21, 2021) (citing 5 C.F.R. § 550.1201–1207). The Court approved settlements in *Archuleta*

---

[3] The facts of this litigation are well-trodden ground. The Court adopts the background and factual findings of the many preceding opinions deciding the primary issues in this case. *See Kandel v. United States*, 85 Fed. Cl. 437 (2009); *Kandel v. United States*, 115 Fed. Cl. 749 (2014); *Kandel v. United States,* 115 Fed. Cl. 752 (2014); *Kandel v. United States*, 133 Fed. Cl. 300 (2017); *Kandel v. United States*, No. 06-872C, 2021 WL 2627135, (Fed. Cl. June 25, 2021)*; Kandel*, 160 Fed. Cl. at 255 (denying attorney's fees under § 2412(b)). The recitation of facts herein constitutes findings of fact pursuant to RCFC 52(a).

[4] *See Agencies*, Fed. Reg., https://www.federalregister.gov/agencies (last visited June 10, 2024); *FedScope Federal Workforce Data*, U.S. Off. of Pers. Mgmt. ("OPM"), https://www.fedscope.opm.gov/ (last visited June 10, 2024). It is important to note that this figure excludes a number of departments and agencies, including the U.S. Postal Service and most of the legislative and judicial branches. *See id.*

[5] Due to the vast number of filings in this case, the Court refers to docketed documents by their ECF Number rather than their title.

[6] The *Archuleta* settlement class was limited to former employees of seventeen specific agencies, none of which formerly employed the named plaintiffs in this case. *Kandel*, 85 Fed. Cl. at 438 (discussing *Archuleta*). Here, Plaintiffs "all separated from federal employment between 1995 and 1999, and were all previously employed by federal agencies not named, but still covered by, the original *Archuleta* complaint naming all federal agencies." *Id.* at 440.

in June 2006 and *Athey* in June 2017. *Archuleta*, Case No. 99-205C, ECF No. 100; *Athey*, Case No. 99-2051C, ECF No. 294.

Full settlement of the underlying claims in *Kandel*, however, was piecemeal. In July 2020, the Court adopted the parties' definitions of two different subclasses. The first was the "Settlement Subclass," which covered 704 claimants and most of the allegedly offending agencies. (ECF No. 387 at 1–2). On October 30, 2020, the Court approved an amended partial settlement for the Settlement Subclass for $268,308.46. (ECF No. 405). This settlement excluded the claims of 492 former employees of the Panama Canal Commission who are members of the "Panama Canal Commission ["PCC"] Subclass." (ECF No. 387 at 2–3).[7] On June 25, 2021, the Court approved a settlement agreement to resolve the PCC Subclass claims. (ECF No. 424). Per those terms, the parties agreed to a compromised settlement of $36,900 to resolve the claims of the remaining former PCC employees.[8] (ECF No. 421). Neither settlement package included "interest, attorney fees, expenses, and costs, and the costs and fees of the class action administrator." (*See* ECF Nos. 370, 421, 425 ("Although the merits of this case have been resolved by way of settlement, issues relating to plaintiffs' entitlement to attorney fees, litigation costs, fees and expenses, and the costs and fees of the class action administrator, have not been addressed[.]")).

With both *Kandel* subgroups having reached the apex of settlement, the parties sought a stay pending the Federal Circuit's attorneys' fees decision in *Athey*. (ECF No. 425). The parties stated that the Circuit's decision would "directly impact the award of attorney fees and expenses and costs and fees of the class action administrator in this case." (*Id.*). The Court granted this request. (ECF No. 426). The Court of Appeals for the Federal Circuit affirmed the trial court's determination that the *Athey* plaintiffs did not qualify for payment of attorney fees under two provisions of EAJA—specifically, 28 U.S.C. § 2412(b) and (d). *Athey*, 2021 WL 4282593, at *1.

Once the stay was lifted, (ECF No. 428), Plaintiffs moved for attorney fees and related expenses pursuant to § 2412(b), arguing that because the *Athey* decision was nonprecedential, the Court should disregard its ruling. (ECF No. 433). The Court denied that motion in June 2022, holding that *Athey* controlled. (ECF No. 436). Afterward, Plaintiffs renewed their application for an EAJA award for attorney fees and expenses, this time under EAJA § 2412(d). (Mot. for Attorney Fees ("Pls.' Mot.") at 1, ECF No. 461; *see also* Pls.' Mem., ECF No. 462). Plaintiffs' renewed EAJA petition is ripe for decision.

---

[7] After the parties' motion to approve this partial settlement and before final approval, Plaintiffs amended paragraphs thirty-three to thirty-seven of their Complaint to "repeat verbatim or summarize all of the pertinent allegations of the original complaint which specifically apply only to the 492 class action members of the 'PCC Subclass[.]'" (ECF No. 399).

[8] According to the United States, the 492 foreign nationals working for the PCC in Panama (PCC Subclass) did not provide evidence to support their claims. (Def.'s Resp. at 6, ECF No. 467). "Since finding those records would cost more than any potential payout, a settlement of $75 was agreed upon for each subclass member." (*Id.*). Unclaimed funds reverted to the United States. (*See* ECF No. 421).

## II.   Analysis[9]

Plaintiffs propose three alternative attorneys' fee sums:

- Alternative I: Plaintiffs seek $664,948.40 in attorneys' fees (at the reduced rate of $210.62 per hour) and $36,386.20 in expenses for Plaintiffs' Attorney Ira M. Lechner (totaling $701,334.40); with this, Plaintiffs also apply for $43,429.45 for Attorney Steven Winton (at the reduced hourly rate of $210.62). (Pls.' Mot. at 1).

- Alternative II: Plaintiffs seek $2,584,946.80 for what they characterize as "the extraordinary and unusual delay of sixteen (16) years in successfully prosecuting this case from December 22, 2006 to April 21, 2023[,]" plus $36,386.20 in expenses for Mr. Lechner. (*Id.*).

- Alternative III: Plaintiffs apply for $158,226.55 in fees for Mr. Winton at his historical rates for the same reasons of undue delay in the case. (*Id.* at 1–2).

By the Court's calculations, Plaintiffs' first (and presumably preferred) alternative totals $744,763.85, which would compensate expenses and fees for Mr. Lechner and Mr. Winton; Alternative II totals $2,621,333.00, which would compensate for expenses and fees for *only* Mr. Lechner; Alternative III totals at $158,226.55 and would compensate *only* the fees for Mr. Winton.[10] In addition to these sums, Plaintiffs also request "$730,021.34 in the fees and costs of the Class Action Administrator[.]" (Pls.' Mot. at 8).

Regardless of the quantum of the requested fees, the United States objects to any award for two main reasons: (1) Plaintiffs are not the prevailing party, (Def.'s Resp. to Mot. for Atty Fees ("Def.'s Resp.") at 13–22, ECF No. 467); and (2) the Government's position was substantially justified, (*id.* at 22–29).[11] As explained below, the Court finds the position of the

---

[9] The conclusions herein constitute conclusions of law pursuant to RCFC 52(a).

[10] It is unclear why these alternative numbers differ so greatly. The hearing offered no clarity. (Hearing Transcript ("Tr.") 46:3–51:17, ECF No. 479). The Court reiterated that the propriety of the recorded hours was not being challenged. (*Id.* at 47–48 (Colloquy: "I am not questioning whether these fees are justified, whether they're proper under EAJA, or anything of that nature. I am simply trying to identify, because of some confusion on my part, as to exactly what Plaintiff is seeking.")). While some flexibility in the contents of an EAJA petition may be warranted, *Bazalo v. West,* 150 F.3d 1380, 1383 (Fed. Cir. 1998), it is not the Court's responsibility to choose among a host of proffered possible awards.

[11] As to individuals, EAJA defines a "party" as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed[.]" 28 U.S.C. § 2412(d)(2)(B)(i)–(ii). The United States notes that Plaintiffs failed to comply with this requirement. (Def.'s Resp. at 11). In their Reply, Plaintiffs attach affidavits from Plaintiffs Knopes, Zuckerman, and Kandel affirming that their net worth was less than $2,000,000 at the time the suit was filed. (Pls.' Reply Ex. 1, ECF

United States was "substantially justified" and the Court rejects the Plaintiffs' petition for costs and fees under Subsection (d) of EAJA.

### A. Recovery Under EAJA: 28 U.S.C. § 2412(d)

Plaintiffs bring this Motion under EAJA § (d), which begins by stating:

> **(d)(1)(A)** Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
>
> **(B)** A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(A–B).

Simply put, to obtain an award under Subsection (d) of EAJA, a party must satisfy five requirements: (1) the fee application must be submitted within thirty days of a final judgment and be supported by an itemized statement; (2) at the time the civil action was initiated, the applicant must not have been valued at more than a certain net worth threshold; (3) the applicant must have been the "prevailing party" in a civil action brought by or against the United States; (4) the government's position must not have been "substantially justified;" and (5) there cannot exist any special circumstances that would make an award unjust. *WHR Grp., Inc. v. United States*, 121 Fed. Cl. 673, 676 (2015) (citing 28 U.S.C. § 2412(d)(1)(A)-(B)). The party seeking fees bears the burden of satisfying the first three requirements. *See* 28 U.S.C. § 2412(d)(1)(B).

---

No. 461-1). To the extent it applies to those three Plaintiffs, the United States affirms that the requisite has been satisfied. (Tr. at 5:23–25). However, the United States argues that this prerequisite applies to all class members. (*Id.* at 6:1–5). Because Plaintiffs' Motion is denied on other grounds, the Court declines to substantively address this argument.

The burden then shifts to the government to show its position was "substantially justified" or that special circumstances make an award unjust. *Athey v. United States*, 149 Fed. Cl. 497, 511 (2020) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 100 Fed. Cl. 750, 759 (2011) and *Helfer v. West*, 174 F.3d 1332, 1336 (Fed. Cir. 1999)). Here, the crux of the parties' disagreement revolves around whether Plaintiffs classify as a prevailing party and whether the United States was substantially justified in its position.

1. The Class was the prevailing party for purposes of § 2412(d).

Plaintiffs argue that they "prevailed because the United States voluntarily entered two (2) settlement agreements admitting that it was fully liable for this court-ordered relief which triggered a 'material alteration of the parties' legal relationships necessary to permit an award of attorney's fees." (Pls.' Mot. at 2 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001)); *see also* Pls.' Mem. at 4–12). The United States responds that Plaintiffs are not a prevailing party because "[s]etting aside their mischaracterizations of the terms of the settlement agreements, the [P]laintiffs' reliance on *Buckhannon* is misplaced because the Supreme Court unambiguously rejected this 'catalyst theory' as a means of demonstrating their prevailing party status." (Def.'s Resp. at 13). The United States also argues that "[n]either the settlement agreements nor the orders approving them bear the hallmarks of consent decrees or anything akin to a consent decree that carries sufficient judicial imprimatur to materially alter the parties' legal relationship." (*Id.* at 16). Plaintiffs respond that securing "two comprehensive settlement agreements mandating the United States pay $268,308.46 in back pay damages (and requisite taxes) to the settlement class, plus $36,900 to the PCC class," necessarily altered the legal relationship between Plaintiffs and the United States. (Pls.' Reply at 4–6, ECF No. 473). Persuaded by its previous ruling in *Athey*, the Court agrees with Plaintiffs.

A "prevailing party" must show that it "receive[d] at least some relief on the merits of [its] claim[.]" *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). A settlement in favor of the fee petitioner evinces success on the merits of at least some of its claims. *See Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees."). The key consideration is whether there has been a "material alteration of the legal relationship [between] the parties[.]" *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989).

As both parties point out, this case is directly related to *Archuleta* and *Athey*. Plaintiffs explained in their previous EAJA application that the present case is a corollary to *Athey*, which raised "[t]he same category of claims for a lump-sum back payment" on behalf of employees of different agencies. (*See* ECF No. 429-6 at 2); *Kandel*, 160 Fed. Cl. at 256. In *Athey*, the Court found "[t]he Class secured a settlement for its members, which the Court approved, materially altering the parties' legal relationship." *Athey*, 149 Fed. Cl. at 514 (denying fees on substantial justification grounds). In that litigation, the Court found—and the Federal Circuit affirmed—that plaintiffs were "clearly a 'prevailing party' for the purposes of § 2412(d)." *Id.*

Rulings throughout *Athey* directly impacted various aspects of this case. *See Kandel*, 85 Fed. Cl. at 439, *clarifying Athey v. United States,* 78 Fed. Cl. 157 (2007). The cases were briefly consolidated, (ECF No. 230 ("Counsel in *Athey* expressed that they are amenable to

consolidating the *Athey* and *Kandel* matters for the limited purpose of considering and resolving whether a violation of the lump-sum payment statute constitutes a violation of the Back Pay Act[.]")), and resulted in the same ruling, *Athey v. United States*, 123 Fed. Cl. 42 (2015). Notably, though, *Kandel* was stayed during the pendency of *Athey*'s EAJA appeal, (ECF No. 426). The Court would be remiss to not consider the respective parties' wins and relevant rulings in *Athey*. In examining Subsection (d), the Court found that the "Class secured a settlement in excess of $600,000 for its members, which the Court approved, materially altering the parties' legal relationship," thus the class was "clearly a 'prevailing party' for the purposes of § 2412(d)." *Athey*, 149 Fed. Cl. at 514.

As stated above, after many years of undoubtedly zealous litigation, the parties settled this case in two parts, with two subclasses. In total, Plaintiffs' claims were settled for a total of $305,208.46. (*See* ECF Nos. 405 (order approving first settlement for $268,308.46), 424 (order approving second settlement for $36,900)). Following the same logic in *Athey*, the Court finds that Plaintiffs have satisfied their burden to show that they are prevailing party in this case, having secured a judgment and materially altering the parties' legal relationship. *See* 149 Fed. Cl. at 514. However, as the Court also stated in *Athey*, that determination does not create a presumption of entitlement to recover attorney's fees. *Id.* (citing *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1079 (Fed. Cir. 2000)).

2. The United States' position was substantially justified.

Whether a government position is "substantially justified" is measured by looking at the government's stance throughout the proceedings, including all administrative proceedings related to the civil action, and the government's position is viewed as a whole, with one "threshold determination for the entire civil action to be made." *Comm'r v. Jean*, 496 U.S. 160, 159 (1990). In *Jean*, the Supreme Court emphasized the need for a singular assessment of the government's position in the entirety of the case by holding that the government can be unjustified in individual matters and still justified on the inclusive whole of the case. *Id.* at 161–62. The "position" of the United States "refers to the government's position throughout the dispute, including not only its litigating position but also the agency's administrative position." *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995), *as modified*, 109 F.3d 746 (Fed. Cir. 1997).

Substantial justification is not determined solely by who won and lost on the merits. *See Pierce v. Underwood*, 487 U.S. 552, 569 (1988) ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."). To avoid liability under § 2412(d), the United States' position must merely be "justified to a degree that could satisfy a reasonable person." *Id*. at 565. The key concept here is reasonableness. Could a reasonable person, considering all the information available at the time, believe the government's position had a plausible basis in law and fact? *See Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991) ("[T]rial courts are instructed to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact."). If the answer is yes, the government's position might be considered substantially justified, even if the government does not ultimately prevail in the lawsuit. *Id.* at 716.

This decision is highly discretionary and courts "must be wary not to redistribute these weights among different positions unless a serious error in judgment has been made." *Id*. at 715 n.4. So long as the United States has offered a "plausible defense, explanation, or substantiation for its action[,]" fee awards under EAJA should be denied. *See Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 6–7 (1990). Small wins throughout litigation are not necessarily enough. *See Crawford v. United States,* 66 F.4th 1339, 1346 (Fed. Cir. 2023) ("Weighed against the totality of the government's conduct, that small grace does not constitute substantial justification."). However, the Court may consider a string of successes as an indication of justification. *See Athey*, 149 Fed. Cl. at 513; *Pierce*, 487 U.S. at 569.

Here, Plaintiffs state that the United States committed "numerous and substantial errors" and that "twenty-three (23) different federal agencies had no basis in fact or law to fail to pay required lump-sum payments of [cost-of-living adjustments], and other required post-employment payroll adjustments." (Pls.' Mot. at 3; *see also* Pls.' Mem. 13–16). Plaintiffs seem to also maintain that, by virtue of Plaintiffs being a prevailing party, the United States could not be substantially justified. (Pls.' Mot. at 3 ("Those federal agencies were not 'substantially justified' in failing to abide by statutory law. The government ultimately entered into two separate Settlement Agreements which resulted in the government's payment of $268,308.46 in lump-sum payment damages . . . to the Settlement Subclass and $36,900 to the members of the PCC Subclass.")). This position misapprehends EAJA jurisprudence.

Although success or failure on the merits is not always determinative, in cases such as this one involving multiple issues and decisions, "a string of losses can be indicative; and even more so a string of successes." *Pierce*, 487 U.S. at 569. The United States position was ultimately vindicated on several critical matters including:

- o **Standing:** The United States challenged Plaintiffs' right to sue under 5 U.S.C. § 5552; the Court agreed, limiting the scope of the lawsuit. (*See* ECF No. 123 (order certifying class and excluding claims under 5 U.S.C § 5552 because no named plaintiffs fell within the scope of this section)).

- o **Inapplicable Agencies:** The United States demonstrated that some agencies either were not subject to the relevant law or had already paid their former employees correctly. Faced with this evidence, Plaintiffs narrowed the lawsuit to exclude them. (*See* ECF Nos. 119, 172 (amended order on certification delineating specific agencies)).

- o **Accurate Payments:** The United States went on to evince that several other agencies had already made proper payments, leading Plaintiffs to remove those agencies from the case upon verification. (*See* ECF No. 172).

- o **Unqualified Named Plaintiffs:** The United States successfully argued that some named plaintiffs were excluded from the certified class because they had already received proper payments, resulting in their removal from the suit. (*See* ECF No. 113).

- o **Statute of Limitations**: This Court held that "Section 2501 is unquestionably jurisdictional and that equitable tolling doctrines have no effect on the application of the

limitations period[,]" therefore, "equitable tolling cannot toll the statute of limitations for Plaintiffs in this case." *Kandel v. United States*, 85 Fed. Cl. 437, 439 (2009).

- **PCC Exclusions:** The United States demonstrated that several former PCC employees were not covered by the Lump-Sum Act at the time they left federal service. The Court dismissed claims for those employees. (*See* ECF No. 305); *Kandel v. United States*, 133 Fed. Cl. 300 (2017).

- **Lack of Interest:** The United States successfully argued that Plaintiffs were not entitled to interest on their lump-sum payments. *See Athey v. United States*, 908 F.3d 696 (Fed. Cir. 2018), *aff'g*, 123 Fed. Cl. 42 (2015).

These are more than "small graces," but are instead a string of successes that are persuasive for the United States. *See Crawford*, 66 F.4th at 1346; *Pierce*, 487 U.S. at 569.

Through the efforts of the United States—originally confronted with litigation "potentially comprised of thousands of individuals, from a myriad of different agencies," (ECF No. 166 at 7), final resolution involved 1,196 former employees out of an estimated 2.7–3.4 million potential claimants.[12] (*See* ECF No. 123 at 5–7 (excluding 60 agencies)).[13]



FIGURE OF EXECUTIVE AGENCY EMPLOYEES
FROM OCTOBER 14, 1993 TO SEPTEMBER 7, 1999

---

[12] U.S. Bureau of Labor Statistics, *All Employees, Federal*, retrieved from FRED, Fed. Res. Bank of St. Louis, https://fred.stlouisfed.org/series/CES9091000001, (last visited June 10, 2024).

[13] Some of the excluded agencies were large—such as the Government Accountability Office and Central Intelligence Agency— and some were presumably smaller—such as the Arctic Research Commission and the Presidio Trust. (*See* ECF No. 123 at 5–7).

Like Plaintiffs' wins, the Court must also consider its findings in *Athey* as to the United States' justification. In a previous opinion, the Court agreed with the United States that its overall position was substantially justified largely based on its "string of successes" in paring the case down. *Athey*, 149 Fed. Cl. at 513 (citing the Government's wins on "whether night premium pay, weekend additional pay, and Sunday pay after October 1, 1997 should be included in class members' back lump-sum pay[,]" "whether non-General Schedule employees should be included in the class[,]" and "the issue of class members' entitlement pre-judgment interest under the Back Pay Act."). *Athey* holds that the string of successes "strongly indicates the United States' position was 'justified to a degree that could satisfy a reasonable person.'" *Id.* (citing *Pierce*, 487 U.S. at 569). Notwithstanding the results in *Athey*, a reasonable person would still conclude that the overall position of the United States was substantially justified in this case.

Plaintiffs also argue that they are entitled to damages due to the delay of final resolution. (Pls.' Mot. at 10–12; *see also* Pls.' Mem. at 17–19). The United States admits that "prior to the approval of the PCC Subclass settlement agreement on June 25, 2021, each of the parties sought numerous enlargements of time," however, the parties jointly agreed or acquiesced to many of those enlargements. (Def.'s Resp. at 29). In determining whether an award of attorney fees is warranted under EAJA for delay, the Court must first "determine whether the government bears greater responsibility for delay[;]" if the Court affirmatively makes that determination, it must consider whether the delay has been "reasonably explained," and lastly, "whether the EAJA applicant was harmed by the delay." *Seravalli v. United States*, 16 Cl. Ct. 424, 430 (1989) (citing 28 U.S.C. § 2412(d)).

In support, Plaintiffs state that many of them separated from their employing agencies between October 14, 1993 and September 6, 1999. (Pls.' Mem. at 19). This cannot be overstated: this litigation should not have consumed fifteen years. Even more troubling, this litigation was attenuated from Plaintiffs' dates of separation. Frustration at this speed is warranted. That said, the delay here cannot be attributed solely to the United States.

Based on a cursory review of the docket entries on CM/ECF, approximately thirty-two out of thirty-six enlargements or extensions of time were either unopposed or consented to. Some stays were implemented and deadlines were moved to permit the parties' pursuit of settlement discussions. (*See e.g.*, ECF Nos. 66, 222, 226, 233, 351, 356, 358). As much as the Court appreciates cooperative counsel, Plaintiffs were "entitled to voice objections or frustrations at any time yet chose not to, acquiescing to the sometimes-torpid pace of litigation[.]" *Athey*, 149 Fed. Cl. at 512. These delays cannot be wholly attributable to the United States and have little bearing on its substantially justified position in this instance.

The ricochet of the United States' wins in *Athey*, as well as its position here, had substantial effects on the outcome of this case. Given the United States' critical victories throughout this litigation and prior related litigation, the Court finds that the position of the United States was justified to a degree that could satisfy a reasonable person and therefore "substantially justified" under § 2412(d). Because of this, Plaintiffs are precluded from recovering fees and expenses under EAJA.

### III. Conclusion

The United States' position throughout this litigation is well-supported. As a result, Plaintiffs' Motion for Attorneys' Fees, (ECF No. 461), is **DENIED**.

As an administrative matter, Plaintiffs orally, and without prior notice, moved to transfer this case to Judge L. Smith due to his involvement from 2007 to 2013. (Tr. 34:4–35:2). Under RCFC 40.1(b), in order "[t]o promote docket efficiency, to conform to a case the requirements of any case management plan, or for the efficient administration of justice," a case may be transferred "to another judge upon the agreement of both [presiding] judges." On the record, the Court found that the conditions of RCFC 40.1(b) had not been satisfied and denied Plaintiffs' motion. (Tr. 35:3–17). This Order commemorates that ruling.

**IT IS SO ORDERED.**



s/     David A. Tapp
DAVID A. TAPP, Judge